**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4710
_____

KELLEY JOSEPH MALA,
Appellant

v.

CROWN BAY MARINA, INC.
_____

On Appeal from the District Court
of the Virgin Islands
District Court No. 3-06-cv-00120
District Judge: The Honorable Juan R. Sanchez

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 3, 2012

Before: SMITH, HARDIMAN, and ROTH, Circuit
Judges

(Filed: January 7, 2013)

1

Alan R. Feuerstein
Feuerstein & Smith
475 Delaware Avenue
Buffalo, NY 14202
    *Counsel for Appellant*

W. Mark Wilczynski
Palm Passage C20-22
P.O. Box 1150
St. Thomas, VI 00804
    *Counsel for Appellee*

_____

OPINION

_____

SMITH, *Circuit Judge.*

Kelley Mala sued Crown Bay Marina after his boat exploded. The District Court conducted a bench trial during which Mala represented himself and after which the court rejected his negligence claims. Mala now contends that the court should have provided him with additional assistance because of his status as a pro se litigant. He also contends that the court wrongfully denied his request for a jury trial and improperly ruled on

2

a variety of post-trial motions. We reject these contentions and we will affirm.

I

Mala is a citizen of the United States Virgin Islands. On January 6, 2005, he went for a cruise in his powerboat near St. Thomas, Virgin Islands. When his boat ran low on gas, he entered Crown Bay Marina to refuel. Mala tied the boat to one of Crown Bay's eight fueling stations and began filling his tank with an automatic gas pump. Before walking to the cash register to buy oil, Mala asked a Crown Bay attendant to watch his boat.

By the time Mala returned, the boat's tank was overflowing and fuel was spilling into the boat and into the water. The attendant manually shut off the pump and acknowledged that the pump had been malfunctioning in recent days. Mala began cleaning up the fuel, and at some point, the attendant provided soap and water. Mala eventually departed the marina, but as he did so, the engine caught fire and exploded. Mala was thrown into the water and was severely burned. His boat was unsalvageable.

More than a year later, Mala sued Crown Bay in

3

the District Court of the Virgin Islands.[1] Mala's pro se complaint asserted two claims: first, that Crown Bay negligently trained and supervised its attendant, and second, that Crown Bay negligently maintained its gas pump. The complaint also alleged that the District Court had admiralty and diversity jurisdiction over the case, and it requested a jury trial. At the time Mala filed the complaint, he was imprisoned in Puerto Rico. Although the record is silent on the reason for his imprisonment, it is fair to say that he is a seasoned litigant—in fact, he has filed at least twenty other pro se lawsuits.[2] *See* Appellee's Br. at 21–22.

Mala's original complaint named "Crown Bay Marina Inc." as the sole defendant. But Mala soon amended his complaint by adding other defendants— including Crown Bay's dock attendant, Chubb Group Insurance Company, Crown Bay's attorney, and "Marine Management Services Inc, [a] registered corporation entity duly licensed to conduct business in the State of Florida . . . , d/b/a Crown Bay Marina Inc, [ ] a corporate

---

[1] Chief Judge Curtis Gomez was initially assigned the case, but Judge Juan Sanchez took over in the middle of 2010 and presided over the trial.

[2] Mala requested a court-appointed attorney in this case, but the District Court denied the request because his history of filing frivolous lawsuits prevented him from securing *in forma pauperis* status. *See* 28 U.S.C. § 1915.

4

entity duly licensed to conduct business in St. Thomas Virgin Islands of the Unites States." JA 55. The District Court allowed Mala to amend his complaint a second time by adding his wife as a plaintiff—though the court dismissed her loss-of-consortium claim shortly thereafter. Mala later attempted to amend his complaint a third time by adding Texaco as a defendant. The District Court rejected this attempt for failing to comply with Federal Rule of Civil Procedure 15(a)(2) (requiring the other side's consent or the court's leave).[3]

As the trial approached, two significant incidents took place. First, the District Court decided on its own to identify the parties to the case. It concluded that the only parties were Mala and "Marine Services Management d/b/a Crown Bay Marina, Inc." JA 132. It thereby dismissed all other defendants that Mala had named in his various pleadings.

Next, Crown Bay filed a motion to strike Mala's jury demand. Crown Bay argued that plaintiffs generally do not have a jury-trial right in admiralty cases—only when the court also has diversity jurisdiction. And Crown Bay asserted that the parties were not diverse in this case, which the court itself had acknowledged in a previous

---

[3] Because the District Court refused to add Texaco as a defendant, *see* JA 94 n.2, we have omitted "Texaco Puerto Rico" from the case caption.

5

order. In response to this motion, the District Court ruled that both Mala and Crown Bay were citizens of the Virgin Islands. The court therefore struck Mala's jury demand, but nevertheless opted to empanel an advisory jury.

The trial began at the end of 2010—nearly four and a half years after Mala filed his complaint. The delay is partly attributable to the District Court's decision to postpone the trial until after Mala's release from prison. At the close of Mala's case-in-chief, Crown Bay renewed a previous motion for summary judgment. The court granted the motion on the negligent-supervision claim but allowed the negligent-maintenance claim to go forward. At the end of the trial, the advisory jury returned a verdict of $460,000 for Mala—$400,000 for pain and suffering and $60,000 in compensatory damages. It concluded that Mala was 25 percent at fault and that Crown Bay was 75 percent at fault. The District Court ultimately rejected the verdict and entered judgment for Crown Bay on both claims.

After his loss at trial, Mala filed a flurry of motions, asking the court to vacate its judgment and hold a new trial. These motions contained numerous overlapping objections. A magistrate judge prepared three Reports and Recommendations that summarized Mala's claims and urged the District Court to reject all of them. Judge Sanchez adopted these recommendations

and explained his reasoning in an eight-page opinion.

This appeal followed. Mala argues that the District Court made three reversible errors. First, the court failed to accommodate Mala as a pro se litigant. Second, it improperly denied his request for a jury trial. Third, it erroneously adopted the magistrate's recommendations. We consider and reject these arguments in turn.[4]

II

Mala first argues that the District Court did not give appropriate consideration to his status as a pro se litigant. Specifically, he claims that the District Court should have provided him with a pro se manual—a manual that is available to pro se litigants in other districts in the Third Circuit and throughout the country. We conclude that pro se litigants do not have a right to general legal advice from judges, so the District Court did not abuse its discretion by failing to provide a manual.

---

[4] The District Court had admiralty jurisdiction under 28 U.S.C. § 1333(1). Mala argues that the court also had diversity jurisdiction under 28 U.S.C. § 1332. This argument determines the outcome of Mala's jury claim, so we will discuss it in Part III. At all events, we have jurisdiction under 28 U.S.C. § 1291.

According to Mala, "[t]here is comparatively little case law regarding the responsibility of courts to provide information and assistance to the *pro se* party." Appellant's Br. at 7. A more accurate statement is that there is *no* case law requiring courts to provide general legal advice to pro se parties. In a long line of cases, the Supreme Court has repeatedly concluded that courts are under no such obligation. *See, e.g.*, *McKaskle v. Wiggins*, 465 U.S. 168, 183–184 (1984) ("A defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure. Nor does the Constitution require judges to take over chores for a *pro se* defendant that would normally be attended to by trained counsel as a matter of course."); *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975).

The Supreme Court revisited this line of cases nearly a decade ago. In *Pliler v. Ford*, 542 U.S. 225 (2004), the Court rejected the idea that district courts must provide a specific warning to pro se litigants in certain habeas cases. It concluded that "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants." *Id.* at 231. After all, a "trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal 'chores' for the defendant that counsel would normally carry out." *Id.* (quoting *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 162 (2000)) (quotation

marks omitted). Because of this general rule, courts need not, for example, inform pro se litigants of an impending statute of limitation. *See Outler v. United States*, 485 F.3d 1273, 1282 n.4 (11th Cir. 2007) ("[N]o case has ever held that a *pro se* litigant should be given actual notice of a statute of limitations.").

The general rule, then, is that courts need not provide substantive legal advice to pro se litigants. Aside from the two exceptions discussed below, federal courts treat pro se litigants the same as any other litigant. This rule makes sense. Judges must be impartial, and they put their impartiality at risk—or at least might *appear* to become partial to one side—when they provide trial assistance to a party. *See Pliler*, 542 U.S. at 231 ("Requiring district courts to advise a *pro se* litigant . . . would undermine district judges' role as impartial decisionmakers."); *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986); *see also* Julie M. Bradlow, Comment, *Procedural Due Process Rights of Pro Se Civil Litigants*, 55 U. Chi. L. Rev. 659, 671 (1988) ("[E]xtending too much procedural leniency to a pro se litigant risks undermining the impartial role of the judge in the adversary system."). Moreover, this rule eliminates the risk that judges will provide bad advice. *See Pliler*, 542 U.S. at 231–32 (noting that warnings and other legal advice "run the risk of being misleading themselves"); *see also* Robert Bacharach & Lyn Entzeroth, *Judicial Advocacy in Pro Se Litigation: A Return to Neutrality*, 42

9

Ind. L. Rev. 19, 42 (2009) ("[G]iving legal advice is prohibited by multiple canons of judicial conduct.").

To be sure, some cases have given greater leeway to pro se litigants. These cases fit into two narrow exceptions. First, we tend to be flexible when applying procedural rules to pro se litigants, especially when interpreting their pleadings. *See, e.g.*, *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established."). This means that we are willing to apply the relevant legal principle even when the complaint has failed to name it. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). And at least on one occasion, we have refused to apply the doctrine of appellate waiver when dealing with a pro se litigant. *Tabron v. Grace*, 6 F.3d 147, 153 n.2 (3d Cir. 1993). This tradition of leniency descends from the Supreme Court's decades-old decision in *Haines v. Kerner*, 404 U.S. 519 (1972). In *Haines*, the Court instructed judges to hold pro se complaints "to less stringent standards than formal pleadings drafted by lawyers." *Id.* at 520; *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

We are especially likely to be flexible when dealing with imprisoned pro se litigants. Such litigants often lack the resources and freedom necessary to comply with the technical rules of modern litigation. *See Moore v. Florida*, 703 F.2d 516, 520 (11th Cir. 1983)

10

("Pro se prison inmates, with limited access to legal materials, occupy a position significantly different from that occupied by litigants represented by counsel"). The Supreme Court has "insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed and [has] held that some procedural rules must give way because of the unique circumstance of incarceration." *McNeil v. United States*, 508 U.S. 106, 113 (1993) (citations omitted). Accordingly, the Supreme Court has concluded that pro se prisoners successfully file a notice of appeal in habeas cases when they deliver the filings to prison authorities—not when the court receives the filings, as is generally true. *Houston v. Lack*, 487 U.S. 266, 270–71 (1988) ("Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30-day deadline.").

Yet there are limits to our procedural flexibility. For example, pro se litigants still must allege sufficient facts in their complaints to support a claim. *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). And they still must serve process on the correct defendants. *See Franklin v. Murphy*, 745 F.2d 1221, 1234–35 (9th Cir. 1984). At the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants. *See McNeil*, 508 U.S. at 113 ("[W]e have never suggested that procedural rules in

11

ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

The second exception to our general rule of evenhandedness is likewise narrow. We have held that district courts must provide notice to pro se prisoners when converting a motion to dismiss into a motion for summary judgment. *See Renchenski v. Williams*, 622 F.3d 315, 340 (3d Cir. 2010). In particular, courts must tell pro se prisoners about the effects of not filing any opposing affidavits. *Id.*; *see also Somerville v. Hall*, 2 F.3d 1563, 1564 (11th Cir. 1993); *Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992); *Klingele v. Eikenberry*, 849 F.2d 409, 411 (9th Cir. 1988) (concluding that the rule applies only to pro se prisoners). *But see Williams v. Browman*, 981 F.2d 901, 903–04 (6th Cir. 1992) (holding that such notice is unnecessary); *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992) (same).

Similarly, the Supreme Court has required district courts to provide notice to pro se litigants in habeas cases before converting any motion into a motion to vacate under 28 U.S.C. § 2255. *See Castro v. United States*, 540 U.S. 375, 383 (2003). The underlying principle is simple: when a court acts on its own in a way that significantly alters a pro se litigant's rights—for example, by converting one type of motion into a different type of

12

motion—the court should inform the pro se party of the legal consequences. But as the Supreme Court made clear only a few months after *Castro*, notice is the exception. Nonassistance is the rule. *See Pliler*, 542 U.S. at 231, 233–34.

That brings us back to Mala's claim. Mala argues that the District Court should have provided him with a pro se manual. Various district courts have created manuals to help pro se litigants navigate the currents of modern litigation. *See, e.g.*, U.S. District Court for the Eastern District of Pennsylvania, *Clerk's Office Procedural Handbook* (2012), http://www.paed.uscourts.gov/documents/ handbook/handbook.pdf; U.S. District Court for the Western District of Pennsylvania, *Pro Se Package: A Simple Guide to Filing a Civil Action* (2009), http://www.pawd.uscourts.gov/Documents/Forms/PROS E_manual_2009.pdf; U.S. District Court for the District of New Jersey, *Procedural Guide for Pro Se Litigants* (2006), http://www.njd.uscourts.gov/rules/proselit-guide.pdf. These manuals are generally available online and in the clerk's office. They explain how to file a complaint, serve process, conduct discovery, and so forth. In addition, public-interest organizations have supplemented these manuals by publishing their own guides for pro se litigants. *See, e.g.*, Columbia Human Rights Law Review, *A Jailhouse Lawyer's Manual* (9th ed. 2011), http://www3.law.columbia.edu/ hrlr/jlm/toc/.

13

These manuals can be a valuable resource for pro se litigants. They may help litigants assert and defend their rights when no lawyer is available. And they can reduce the administrative burden on court officials who must grapple with inscrutable pro se filings. Because these manuals do not provide case-specific advice and because they are available to all litigants—not just to pro se litigants—they do not impair judicial impartiality. *See* Nina I. VanWormer, Note, *Help at Your Fingertips: A Twenty-First Century Response to the Pro Se Phenomenon*, 60 Vand. L. Rev. 983, 1018 (2007) ("By providing pro se litigants with easy, understandable, and reliable access to both procedural and substantive law, court systems can uphold their mandate to impartially administer justice to all, while at the same time increasing the efficiency with which they can manage their dockets."). Without a doubt, these manuals are informative, and inexperienced litigants would do well to seek them out.

That said, nothing requires district courts to provide such manuals to pro se litigants. *See Pliler*, 542 U.S. at 231 ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."). To put it another way, pro se litigants do not have a right—constitutional, statutory, or otherwise—to receive how-to legal manuals from judges. *See McKaskle*, 465 U.S. at 183–184 ("[T]he Constitution [does not] require judges to take over chores for a *pro se* defendant that would

14

normally be attended to by trained counsel as a matter of course."). And Mala has less reason to complain than the neophyte pro se litigant, having filed more than twenty suits in the past. *See* Appellee's Br. at 21–23. His experiences have made him well acquainted with the courts. *See Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994) (refusing to be flexible when interpreting a complaint because the plaintiff was "an extremely litigious inmate who [was] quite familiar with the legal system and with pleading requirements"); *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 445–46 (N.D.N.Y. 2009). The District Court's failure to provide Mala with a pro se litigation manual was not an abuse of discretion.[5]

Mala also suggests that the District Court abused its discretion by not considering his status as a prisoner during the early stages of litigation. His problem,

---

[5] We would reject Mala's claim even if the District Court had an obligation to provide a pro se manual. For one thing, Mala never indentified anything that he would have done differently if he had access to such a manual. Moreover, it is unclear why he needed a pro se manual from the District Court of the Virgin Islands. He could have received a manual from other district courts or from public-interest organizations. These manuals are easy to access through an internet search, which Mala could have performed while doing his legal research at the local library. Any error therefore would be harmless.

however, is that he has not identified anything in particular that the court should have done differently. In fact, the court was solicitous of Mala's needs as an incarcerated litigant—delaying the trial until his release from prison and allowing him to amend the complaint at least once despite his noncompliance with Rule 15(a). Contrary to Mala's suggestion, the court accommodated his status as a prisoner.

## III

Mala next argues that the District Court improperly refused to conduct a jury trial. This claim ultimately depends on whether the District Court had diversity jurisdiction. The court concluded that it had only admiralty jurisdiction, and Mala urges us to conclude otherwise. We generally exercise plenary review over jurisdictional questions, but factual findings that "underline a court's determination of diversity jurisdiction . . . are subject to the clearly erroneous rule." *Frett-Smith v. Vanterpool*, 511 F.3d 396, 399 (3d Cir. 2008) (citation and quotation marks omitted). Here, the District Court found that both Mala and Crown Bay were citizens of the Virgin Islands. These findings were not clearly erroneous, and so we conclude that Mala did not have a jury-trial right.

The Seventh Amendment creates a right to civil jury trials in federal court: "In Suits at common law . . . the right of trial by jury shall be preserved." U.S. Const.

16

amend. VII. Admiralty suits are not "Suits at common law," which means that when a district court has only admiralty jurisdiction under 28 U.S.C. § 1331(1), the plaintiff does not have a jury-trial right. *Complaint of Consolidation Coal Co.*, 123 F.3d 126, 132 (3d Cir. 1997) (citing *Waring v. Clarke*, 46 U.S. (5 How.) 441, 458–60 (1847)). But the saving-to-suitors clause in § 1333(1) preserves state common-law remedies. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 390 (3d Cir. 2002). This clause allows plaintiffs to pursue state claims in admiralty cases as long as the district court also has diversity jurisdiction. *Id.* In such cases, § 1333(1) preserves whatever jury-trial right exists with respect to the underlying state claims. *Gorman v. Cerasia*, 2 F.3d 519, 526 (3d Cir. 1993) (noting that the saving-to-suitors clause saves "common law remedies, including the right to a jury trial"); *see also Ross v. Bernhard*, 396 U.S. 531, 537–38 (1970).

Mala argues that the District Court had both admiralty and diversity jurisdiction. As a preliminary matter, the court certainly had admiralty jurisdiction. The alleged tort occurred on navigable water and bore a substantial connection to maritime activity. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (explaining the two-part test for admiralty jurisdiction under § 1333(1)).

The grounds for diversity jurisdiction are less

certain. District courts have jurisdiction under 28 U.S.C. § 1332 only if the parties are completely diverse. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 836 (3d Cir. 2011). This means that no plaintiff may have the same state or territorial citizenship as any defendant. *Id.* The parties agree that Mala was a citizen of the Virgin Islands. He was imprisoned in Puerto Rico when he filed the suit, but his imprisonment is of no moment. Prisoners presumptively retain their prior citizenship when the gates close behind them. *See Hall v. Curran*, 599 F.3d 70, 72 (1st Cir. 2010); *Smith v. Cummings*, 445 F.3d 1254, 1260 (10th Cir. 2006); *Sullivan v. Freeman*, 944 F.2d 334, 337 (7th Cir. 1991). No one challenges that presumption here.

Unfortunately for Mala, the District Court concluded that Crown Bay also was a citizen of the Virgin Islands. Mala rejects this conclusion, stating that the sole defendant was Marina Management Services—a Florida corporation that operated Crown Bay Marina as one of its divisions. For its part, Crown Bay acknowledges that Marina Management Services managed the day-to-day operations at Crown Bay Marina, but Crown Bay argues that the two were separate legal entities. We recognize that the District Court could have done more to clarify the relationship between these

18

two entities.[6] Even so, Mala's claim must fail.

Mala bears the burden of proving that the District Court had diversity jurisdiction. *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006)

---

[6] A few months before trial, the District Court decided to "clarify the pre-trial status of [the] case." JA 131. Because no one else had been served, the court dismissed all defendants other than "Marine Services Management d/b/a Crown Bay Marina, Inc." JA 132. The acronym "d/b/a" stands for "doing business as" and typically indicates that the second name (here, "Crown Bay Marina, Inc.") is the party's trade name, whereas the first name (here, "Marine Services Management," which seems to be a reference to Marina Management Services) is the party's legal name. *See, e.g.*, *Tai-Si Kim v. Kearney*, 838 F. Supp. 2d 1077, 1090 (D. Nev. 2012). This suggests that a Florida corporation was the sole defendant.

On the other hand, during the pre-trial proceedings, Crown Bay claimed to be a Virgin Islands entity, separate from Marina Management Services, *see* JA 122, and later provided testimony to support that claim, *see* Trial 12/6 at 75–76. Also, the District Court concluded that it lacked diversity jurisdiction. *See* JA 96. n.3. This suggests that the sole defendant was a Virgin Islands business and that Marina Management Services was a separate entity.

19

("The party asserting diversity jurisdiction bears the burden of . . . proving diversity of citizenship by a preponderance of the evidence."). Mala failed to meet that burden because he did not offer evidence that Crown Bay was anything other than a citizen of the Virgin Islands. Mala contends that Crown Bay admitted to being a citizen of Florida, but Crown Bay actually denied Mala's allegation that Crown Bay Marina was a division of "Marine Management Services." *Compare* JA 55 ¶ 9 (alleging that Crown Bay Marina was a "corporate entity" under "Marine Management Services"), *with* JA 61 ¶ 9 (admitting that "Marine Management Services" is a Florida corporation but denying everything else).[7]

Absent evidence that the parties were diverse, we are left with Mala's allegations. Allegations are insufficient at trial. *McCann*, 458 F.3d at 286 (requiring a showing of diversity by a preponderance of the

---

[7] Mala also points out that during a pretrial hearing, Crown Bay's attorney introduced himself as "Mark Wilczynski on behalf of Marina Management Services, Inc." JA 144. But this statement does not appear to be an admission that Crown Bay was the same entity as Marina Management Services. Indeed, Crown Bay's attorney might have introduced himself this way simply because the District Court had previously identified the defendant as "Marine Services Management d/b/a Crown Bay Marina, Inc."

evidence). And they are especially insufficient on appeal, where we review the District Court's underlying factual findings for clear error. *Smith*, 511 F.3d at 399. Under this standard, we will not reverse unless "we are left with the definite and firm conviction" that Crown Bay was in fact a citizen of Florida. *Id.* (quotation mark omitted). Mala has not presented any credible evidence that Crown Bay was a citizen of Florida—much less evidence that would leave us with the requisite "firm conviction."

Mala tries to cover up this evidentiary weakness by again pointing to his pro se status. He argues that we should construe his complaint liberally to find diversity. But Mala's problem is not a pleading problem. It is an evidentiary problem. Our traditional flexibility toward pro se pleadings does not require us to indulge evidentiary deficiencies. *See Brooks v. Kyler*, 204 F.3d 102, 108 n.7 (3d Cir. 2000) (indicating that pro se litigants still must present at least affidavits to avoid summary judgment). Accordingly, the parties were not diverse and Mala does not have a jury-trial right.[8]

---

[8] At various times, Mala suggested that the District Court also had supplemental jurisdiction. It is unclear whether he was referring to supplemental jurisdiction under 28 U.S.C. § 1367, or whether he was calling diversity jurisdiction by the wrong name. Either way, the argument fails. As noted above, the parties were not

Mala also claims that the District Court erred by rejecting the advisory jury's verdict. Federal Rule of Civil Procedure 39(c) states that "[i]n an action not triable of right by a jury, the court, on motion or on its own . . . may try any issue with an advisory jury." District courts are free to use advisory juries, even absent the parties' consent. *Compare* Fed. R. Civ. P. 39(c)(2) (requiring consent for a nonadvisory jury when the party does not have a jury-trial right), *with id.* 39(c)(1) (not requiring consent for an advisory jury); *see also Broadnax v. City of New Haven*, 415 F.3d 265, 271 n.2 (2d Cir. 2005). District courts are also free to reject their verdicts, as long as doing so is not independently erroneous. *Wilson v. Prasse*, 463 F.2d 109, 116 (3d Cir. 1972) ("[F]indings by an advisory jury are not binding."). As a result, the District Court did not err in this case by empanelling an advisory jury or by rejecting its verdict.

---

diverse. And even if he was referring to supplemental jurisdiction under § 1367, such jurisdiction exists only when there is no independent basis for federal jurisdiction. *See* 28 U.S.C. § 1367(a) (stating that supplemental jurisdiction is limited to "other claims" over which district courts do not have "original jurisdiction"). Here, the District Court had admiralty jurisdiction over all parts of Mala's claim, as both parties acknowledge. The court did not need supplemental jurisdiction.

22

IV

Mala's final claim is that the District Court erroneously ruled on a handful of post-trial motions. After losing at trial, Mala asked the court to vacate the judgment under Federal Rule of Civil Procedure 60(b) and to grant a new trial under Rules 50(b) and 59. These motions contained several overlapping arguments.[9] A magistrate judge recommended that the District Court reject these motions, and the court adopted the magistrate's recommendations. We conclude that the court did not make a mistake in doing so.

In reviewing a district court's decision to adopt a magistrate's recommendations, "[w]e exercise plenary review over the District Court's legal conclusions and apply a clearly erroneous standard to its findings of fact." *O'Donald v. Johns*, 402 F.3d 172, 173 n.1 (3d Cir. 2005) (per curiam). Mala claims that "the Court stubbornly maintained that its rulings were correct and proper; no real review took place of the facts of the case, especially on the issue of jurisdiction allowing the Plaintiff a jury trial, nor acknowledging that the Court's decision to

---

[9] Among other things, Mala claimed that he should have received a jury trial, that the District Court improperly ignored evidence, that the court did not have jurisdiction once Mala had filed a recusal motion, and that Crown Bay had committed fraud on the court.

23

empanel an advisory jury during the pretrial conference was unclear and confusing to the Plaintiff at best." Appellant's Br. at 23.

Mala's claim has little substance. The magistrate prepared three Reports and Recommendations that discussed Mala's arguments and urged the District Court to deny his motions. Judge Sanchez explained his reasons for doing so in an eight-page opinion. Both judges were meticulous and thorough. Mala has given us no reason to accept his general argument that "no real review took place."

Beyond this general argument, Mala alleges two specific shortcomings. First, he bemoans the District Court's refusal to conduct a jury trial. As noted above, this was not an error. Although the court could have been clearer about Crown Bay's citizenship, Mala nevertheless failed to meet his burden of proving diversity. Second, Mala asserts that he failed to understand that the jury's findings would be nonbinding. This was not the District Court's fault. The court plainly stated that the jury would be advisory. *See* JA 147 ("[CROWN BAY'S ATTORNEY]: And is that in fact the Court's position that there will be an advisory jury? THE COURT: Yes."). We therefore reject Mala's final claim.

\* \* \*

Mala is a serial pro se litigant. In this case, he

24

convinced a jury of his peers to award him over $400,000 in damages. Unfortunately for Mala, the jury was advisory, and the District Court rejected the verdict. We conclude that the court did not err by using an advisory jury or by rejecting its verdict. Nor did the court err by adopting the magistrate's recommendations or by failing to provide a pro se manual. For these reasons we will affirm the District Court's judgment.