**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-3126
_____

BRIGITTE NELSON,
Appellant

v.

ACRE MORTGAGE & FINANCIAL INC; CLASSIC QUALITY HOMES

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-17-cv-01050)
Magistrate Judge: Honorable Joseph F. Saporito, Jr. (by consent)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 17, 2021
Before: MCKEE, SHWARTZ and RESTREPO, Circuit Judges

(Opinion filed: January 12, 2022)
_____

OPINION*
_____

PER CURIAM

Pro se appellant Brigitte Nelson appeals from the United States District Court for

the Middle District of Pennsylvania's order granting summary judgment to defendant

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Acre Mortgage & Financial Inc. ("Acre") on Nelson's federal claims and dismissing without prejudice Nelson's state-law claims against Acre and Classic Quality Homes ("Classic") pursuant to 28 U.S.C. § 1367(c)(3).  For the following reasons, we will vacate the District Court's judgment and remand for further proceedings.

I.

As we write primarily for the parties, who are familiar with the facts, we will discuss the details only as they are relevant to our analysis.  Essentially, Nelson, a retired, disabled military veteran, contracted with Classic to purchase a house and used Acre to obtain a mortgage, which was later transferred to a servicing company, The Money Source.  In her amended complaint, Nelson brought one federal count alleging violations of the Truth in Lending Act (TILA) and Real Estate Settlement Procedures Act (RESPA) against Acre and six state-law counts, some against Classic and some against both defendants.[1]  Acre moved for summary judgment on all of Nelson's claims against it.  The District Court granted Acre's motion in part, entering summary judgment with respect to Nelson's federal claims against Acre described in Count One of the amended complaint, but dismissing her remaining state-law claims against both Acre and Classic

---

[1] Nelson initially filed her complaint through counsel in the United States District Court for the Eastern District of Pennsylvania.  The action was subsequently transferred to the United States District Court for the Middle District of Pennsylvania, where the parties consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  ECF Nos. 24-25.  The District Court later permitted counsel to withdraw and Nelson to proceed pro se.  ECF No. 60 & 66.

without prejudice pursuant to 28 U.S.C. § 1367(c)(3).[2]  ECF Nos. 82-84.  Nelson appeals.[3]

II.

We have jurisdiction under 28 U.S.C. § 1291.[4]  We exercise plenary review over a grant of summary judgment, applying the same standard that the District Court applies. Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 141 (3d Cir. 2017). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Razak v. Uber Techs., Inc., 951 F.3d 137, 144 (3d Cir. 2020) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law."  Id.  The evidence presented is thus viewed "through the prism

---

[2] The court noted that Nelson would be able to transfer those state-law claims to state court pursuant to 42 Pa. Cons. Stat. § 5103(b).  Nelson already filed such an action in the Court of Common Pleas of Monroe County.

[3] The District Court construed Nelson's notice of appeal as also a motion for reconsideration, which the District Court has since denied.  Nelson did not file a new or amended notice of appeal to challenge that order, so that decision is not before us.  Fed. R. App. P. 4(a)(4)(B)(ii).

[4] Nelson, relying on venue provisions in the Pennsylvania Rules of Civil Procedure and Pennsylvania Rules of Criminal Procedure, argues that the District Court lacked jurisdiction.  See Pa. R. Civ. P. § 2179; Pa. R. Crim P. § 584.  Those rules do not apply in federal court.  The District Court had jurisdiction under 28 U.S.C. § 1331 and § 1367(a) (and venue was appropriate under 28 U.S.C. § 1391(b)).

of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." Anderson v. Consol. Rail Corp., 297 F.3d 242, 247 (3d Cir. 2002) (quoting Anderson, 477 U.S. at 254). We "must view the facts and evidence presented in the light most favorable to the nonmoving party." Razak, 951 F.3d at 144.

### III.

In Count One of the amended complaint, Nelson alleged that Acre violated TILA and implementing Regulation Z and RESPA and implementing Regulation X.[5] Specifically, she alleged that Acre failed to make all required disclosures of material terms, improperly represented that Nelson would not have to pay property taxes, failed to make a reasonable and good faith determination of Nelson's ability to pay, and failed to provide notice of the transfer of servicing rights to The Money Source. See 15 U.S.C. §§ 1638, 1639c; 12 U.S.C. § 2605. Nelson alleged that Acre's disclosures were improper because they used outdated documents. Pursuant to a statutory mandate, the Consumer Finance Protection Bureau ("CFPB") revised the regulations governing mortgage disclosures with an effective date of October 3, 2015. See 12 C.F.R. pt. 1026, supp. I,

---

[5] As the District Court noted, the amended complaint cites the version of Regulation Z issued by the Board of the Governors of the Federal Reserve System, 12 C.F.R. § 226, and the Department of Housing and Urban Development version of Regulation X, 24 C.F.R. § 3500. But the rulemaking authorities under TILA and RESPA relevant to this case were transferred in 2011 to the CFPB, which issued substantially identical versions of Regulation Z, 12 C.F.R. pt. 1026, and Regulation X, 12 C.F.R. pt. 1024.

cmt. 1(d)(5). In her amended complaint, Nelson alleged that Acre improperly used the pre-October 3 disclosure forms with her application.

In support of its motion for summary judgment, Acre cited depositions of Nelson, an Acre owner, an Acre employee, and a Classic employee, along with documents including an application and disclosure forms signed by Nelson. ECF No. 72. In response, Nelson filed a memorandum of law and a statement of disputed material facts. ECF Nos. 76, 77. She also submitted 31 exhibits. ECF No. 75. She later submitted a sur-reply brief with a further 15 exhibits. ECF No. 79.[6] Acre argued that the District Court should not consider Nelson's exhibits because she produced no documents in discovery. ECF No. 78 at 2-7.

The District Court ruled that, on the record presented, no reasonable jury could return a verdict for Nelson on her TILA and RESPA claims. Viewing the record in the light most favorable to Nelson, we conclude instead that Acre failed to meet its initial burden to show no genuine dispute as to any material fact. Acre submitted and cited Nelson's deposition testimony, and the District Court considered it. Mem. on Summ. J., ECF No. 82 at 9, 14. Nelson testified regarding several of the key factual questions underlying her federal claim. While Acre provides testimony and documentary evidence

---

[6] On appeal, Nelson submits an additional exhibit, a December 2020 email exchange with a Monroe County employee regarding her case. 3d Cir. ECF No. 11 at 212-14. This exhibit was obviously not part of the record before the District Court, as it postdates the District Court's ruling, so we do not consider it. See In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts, 913 F.2d 89, 96 (3d Cir. 1990) ("This Court has said on numerous occasions that it cannot consider material on appeal that is outside of the district court record.").

to support its own version of events, these materials do not foreclose a reasonable jury from crediting Nelson's testimony over Acre's account and finding Acre liable.

First, Nelson alleged that Acre improperly provided disclosures under the pre-October 3, 2015 regulatory regime. The CFPB's interpretive guidance provides that the relevant disclosure changes generally apply only where "the creditor or mortgage broker receives an application on or after October 3, 2015." 12 C.F.R. pt. 1026, supp. I, cmt. 1(d)(5).[7] A broker receives an application when it receives "the consumer's name, the consumer's income, the consumer's social security number to obtain a credit report, the property address, an estimate of the value of the property, and the mortgage loan amount sought." 12 C.F.R. pt. 1026, supp. I, cmt. 2(a)(3). Acre argues that the record shows it received this information from Nelson on September 24, 2015, and so properly provided disclosures under the previous requirements. An Acre employee testified that Classic initially referred Nelson to Acre in September regarding a mortgage for a newly constructed home. After speaking to Nelson by phone, Acre began preparing an application. Classic and Nelson later agreed that she would instead purchase a refurbished home and Acre restarted the application process, again by phone. After Acre prepared the second application, Nelson came to the office in person. Suppl. Appx. 273-76, 3d Cir. ECF No. 70. The record contains a loan application form in which Acre's loan originator attests that she collected the information supporting the second

_____

[7] Nelson's claims do not involve the few exceptions that came into force on October 3 regardless of when an application was received. See 12 C.F.R. pt. 1026, supp. I, cmt. 1(d)(5).

application by phone on September 24 and a Good Faith Estimate with that same date. Id. at 303, 310.[8] It also contains disclosure forms signed by Nelson with a September 24 date. Id. at 307-08, 318.

Nelson argues that the September 24 call never occurred and that Acre deliberately backdated her application to avoid the new disclosure requirements. At her deposition, Nelson testified that Classic did not suggest the refurbished home to her until October, and that she first contacted Acre only after that. Suppl. Appx. 196-99.[9] Without the address of the refurbished home, Acre could not receive the mortgage application for that property. See 12 C.F.R. pt. 1026, supp. I, cmt. 2(a)(3). She also testified that, at Acre's request, she later backdated certain documents to September 24. Suppl. Appx. 212, 214.

While Acre cited testimony and exhibits that support its account of events and contradict Nelson's, these materials are not so compelling as to prevent a reasonable jury from disagreeing.[10] None of Acre's documentary evidence addresses any developments

---

[8] Acre and the District Court also cited the deposition testimony of one of Acre's owners in support of the September 24 date, but in the cited passage it appears he merely reads the date from the loan originator's attestation. Mem. on Summ. J. at 9 fn. 4; Suppl. Appx. 171-72.

[9] In the first amended complaint, filed through her then-counsel, Nelson alleged that Classic introduced her to Acre in August 2015. ECF No. 2 ¶ 15. But the complaint does not specifically allege that Nelson reached out to Acre at that time and, in any case, this potential discrepancy does not so undermine her testimony that a reasonable jury could not rule for her on this point.

[10] On the record submitted by Acre, a reasonable jury could also accept portions of each account, such as finding that Nelson and Acre interacted in September, but only concerning the newly constructed property.

7

prior to September 24. There is no testimony from the loan originator who allegedly spoke to Nelson by phone on that day. The originator's attestation was signed at the November closing. Nothing in the record forecloses Nelson's testimony that she signed the other documents with a September 24 date in October at Acre's request.[11] Even in Acre's account, these forms were not signed in person on September 24, and Acre does not cite evidence of how or when they were signed. Viewing this evidence in the light most favorable to Nelson, a reasonable jury could credit her testimony even absent additional evidence and find that Acre did not receive an application within the meaning of the applicable regulation until after October 3. See Anderson, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions."). This genuine dispute of fact is material to Nelson's claim that Acre failed to make the disclosures required by TILA and Regulation Z. See 15 U.S.C. § 1638; 12 C.F.R. § 1026.19(e) & (f).

Next, Nelson alleged that Acre misled her regarding property taxes and conducted a deficient investigation of Nelson's ability to pay. In Pennsylvania, disabled veterans may receive a property tax exemption if their income falls below a certain maximum. During the mortgage application process, the parties believed Nelson would be eligible for an exemption, but she was ultimately denied an exemption because education benefits

---

[11] In her opposition to Acre's summary judgment motion, Nelson attached an October 13 email from Acre's loan originator to Nelson asking Nelson to sign some forms with a September 24 date. Suppl. Appx. at 449; ECF No. 75-6 at 2. As we find that Acre did not meet its initial burden, we do not consider or rely on this exhibit.

that she received as a veteran brought her income over the maximum. Regulation Z requires mortgage lenders to make "good faith estimates" of certain disclosures, including, where an escrow account is established, "an estimate of the amount of taxes and insurance . . . payable with each periodic payment." 12 C.F.R. §§ 1026.18(s)(3)(i)(C), 1026.19(a)(1)(i) (2011)).[12] Where exact information is unknown, lenders are to estimate, acting in good faith and exercising due diligence, by using "the best information reasonable available," which can include relying on the representations of other parties. 12 C.F.R. § 1026.17(c)(2) (2014); 12 C.F.R. pt. 1026, supp. I, cmt. 17(c)(2)(i) (2014).

Acre argues that the record shows it did not include property taxes in Nelson's estimated monthly payments based on her own representations and an appropriate investigation. Acre witnesses testified that Nelson did not disclose her education benefits while applying for the mortgage. They relied on her disclosed income, which they verified against her tax returns. Suppl. Appx. 165-66, 279. Nelson signed a mortgage application which describes her monthly income as consisting solely of her pension, Social Security benefits, and "VA Benefits Non Educational." Id. at 299. The Acre witnesses also testified that they contacted county and federal Veterans Affairs officials as part of their investigation and were told, based on Nelson's declared income, that she should be eligible for an exemption. Id. at 165-66, 277-80. One Acre employee testified

---

[12] While the applicable version of these regulations would hinge on when Acre received an application from Nelson, no amendments are materially relevant here.

that Nelson gave him contact information of someone with Monroe County, and that contact told him that Nelson had herself consulted with the County regarding the tax exemption. Id. at 278.

At her deposition, Nelson testified that she in fact disclosed her education benefits to an Acre employee but that employee told her that she should not include it in her application because it was not permanent income. Id. at 201, 225. Nelson also denied that she consulted with the county regarding the tax exemption prior to closing or told Acre that she did so. Id. at 201, 203-06, 217, 223-5. The Acre employee denies that Nelson ever disclosed her educational benefits. Id. at 275.

Viewing this evidence in the light most favorable to Nelson, a reasonable jury could accept Nelson's testimony that she disclosed her education benefits and disbelieve the Acre employee's contrary testimony. See Anderson, 477 U.S. at 255. Nothing in the remaining relevant evidence is inconsistent with the Acre employee telling Nelson she need not include the education benefits in income and then either inadvertently or deliberately concealing that fact from his colleagues. And if the Acre employee so instructed Nelson, a jury could find that Acre provided faulty disclosures under TILA and Regulation Z by misleading Nelson and inadequately investigating her ability to pay. See 15 U.S.C. § 1638; 12 C.F.R. § 1026.19(e) & (f).

Finally, Nelson alleged that Acre transferred her mortgage for servicing to The Money Source without requisite notice. See 12 C.F.R. § 1024.33. Acre responds that it properly provided notice, pointing to two documents. First, Nelson signed and dated September 24 a servicing disclosure statement advising that Acre would be transferring

10

the mortgage for servicing, but not specifying the details of the transfer or the identity of the transferee. Suppl. Appx. 318. Second, Acre produced a notice of servicing transfer dated November 9 advising that Acre would transfer the mortgage to the Money Source effective January 1, 2016. Suppl. Appx. 319. This form, if provided to Nelson, would meet the requirements of the disclosure regulation. Acre represents that it was given to Nelson at closing, but the document is not signed and Acre did not provide any evidence of delivery or receipt, or argue that it is entitled to any presumption of delivery.

At her deposition, Nelson testified that she never received the notice of servicing transfer and did not learn about The Money Source until after closing. Suppl. Appx. 211. She testified that she sent a December email to Acre about sending payments to The Money Source. Suppl. Appx. 211.

Nelson's claim turns on whether she received the notice of servicing transfer. She may have signed the prior disclosure statement and became aware of the Money Source's involvement in December, but still not received the required notice. Nelson testified that she did not receive the document and, on the evidence submitted by Acre, a reasonable jury could accept that testimony, which is material to her claim that Acre failed to comply with the notice provisions of RESPA and Regulation X, see 12 U.S.C. § 2605(b); 12 C.F.R. § 1024.33, and rule in her favor on this point. See Anderson, 477 U.S. at 255.

We thus conclude that Acre failed to show that there was no genuine dispute as to any material fact based on the materials submitted in support of its motion for summary judgment. We thus do not assess the evidentiary value of the exhibits Nelson submitted in opposition. To the extent that any of those exhibits would, if considered, undermine

11

Nelson's deposition testimony, a reasonable jury could still find for Nelson on the decisive factual questions.

IV.

For these reasons, we conclude that the District Court erred in granting summary judgment in favor of Acre on the record before it, and we will vacate the judgment and remand for further proceedings.[13] Because the District Court declined to exercise supplemental jurisdiction over the state law claims in light of its ruling on the federal claim, we will also vacate the District Court's ruling as to supplemental jurisdiction and remand to give the District Court an opportunity to consider exercising its jurisdiction over Nelson's state law claims. See United States v. Omnicare, Inc., 903 F.3d 78, 94 (3d Cir. 2018). [14]

---

[13] Nelson challenges the District Court's ruling on several procedural grounds. As the resolution of these issues is unnecessary to the outcome, we do not reach them. We note nonetheless that Classic had no obligation to file for summary judgment or participate in this appeal, see Fed. R. Civ. P. 56; the District Court had discretion to rule without oral argument, see Fed. R. Civ. P. 78(b); M.D. Pa. L.R. 7.9; and Nelson could not raise, or expect the District Court to discern, new claims in her opposition to the motion for summary judgment. See Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); cf. Gilmore v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint."). While Nelson may now wish her then-counsel had framed her claims differently, she is "deemed bound by the acts of [her] lawyer," and may only amend her claims in accordance with Federal Rule of Civil Procedure 15. Link v. Wabash R.R. Co., 370 U.S. 626, 634 (1962); see Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (Pro se litigants "must abide by the same [procedural] rules that apply to all other litigants.").

[14] We deny Nelson's motion to disqualify one of Acre's counsel. 3d Cir. ECF No. 12. Counsel's entry of appearance lacks the certificate of service attached to the entries of

counsel, so Nelson may not have received notice.  <u>See</u> 3d Cir. ECF Nos. 3, 5, 15.  But neither this nor anything else in Nelson's motion is grounds for disqualification.