**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2622
_____

STEVEN DAVID VOGT,
                                        Appellant

v.

JOHN E. WETZEL, Secretary of the Department of
Corrections (Official & Individual Capacity); JOHN/JANE
DOE (Mailroom Employee at S.C.I. Fayette)
(Official & Individual Capacity)
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-17-cv-01407)
District Judge: Honorable Arthur J. Schwab
_____

Argued on March 24, 2021

Before: HARDIMAN, GREENAWAY, JR., and BIBAS,
*Circuit Judges*.

(Filed:  August 9, 2021)

Jordan Alston-Harmon
Kamilyn Choi [argued]
(Admitted Pursuant to Third Circuit LAR 46.3)
Yale Law School Advanced Appellate Litigation Project
127 Wall Street
New Haven, CT 06511

Tadhg Dooley
David R. Roth
Pro bono counsel
Wiggin & Dana LLP
265 Church Street, P.O. Box 1832
New Haven, CT 06508-1832

*Pro Bono Counsel for Appellant*

Josh Shapiro, Attorney General
J. Bart DeLone, Chief Deputy Attorney General
Daniel B. Mullen, Deputy Attorney General [argued]
Kemal A. Mericli
Office of Attorney General
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222

*Counsel for Appellees*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Steven Vogt appeals the District Court's order dismissing his complaint for failure to state a claim. A Pennsylvania inmate, Vogt alleged his constitutional rights to due process and access to the courts were violated when prison officials rejected his incoming mail without notifying him of the rejection. We agree with Vogt that the Court's evaluation of his due process claim was erroneous. In doing so, we join several of our sister courts and hold that, under the Supreme Court's decision in *Procunier v. Martinez*, 416 U.S. 396 (1974), prisons must notify inmates when their incoming mail is rejected. Thus, we will vacate and remand the case for further proceedings.

I

Three decades ago, Vogt and Arthur McClearn were part of a group who took Francis Landry to a quarry. There, the group forced Landry off a cliff into the water before rolling a "huge rock" in behind him. App. 79. Landry suffered blunt force trauma and drowned. Vogt and McClearn were arrested shortly afterward. McClearn pleaded guilty to third-degree murder. Vogt went to trial, where McClearn's testimony linked him to Landry's death. The jury convicted Vogt of several crimes, including first-degree murder. As a result, he was sentenced to life without parole.

Not long before McClearn died, he sent a letter to Vogt dated October 23, 2016, in which he recanted his trial testimony. *See* App. 28. Explaining he was "ready to tell the truth," McClearn said his testimony was a lie. *Id.* McClearn wrote that he had a different partner in crime that night; Vogt was "passed out in the car" and "did not go to the quarry." *Id.*

3

So according to the letter—and contrary to McClearn's testimony at trial—Vogt did not have "anything to do with" Landry's murder. *Id.*

McClearn's letter never made it to Vogt that fall. The prison's policy is to reject mail lacking a return address, so it rejected the letter. Some six months later, Vogt contacted a United States Postal Service reclamation center looking for a different mailing. The Post Office returned several items, one of which was McClearn's letter. But by that time, McClearn had been dead for about five months.

After he obtained the letter in the spring, Vogt filed a grievance about the rejection. But the prison denied it as untimely because he filed it well after the previous fall's rejection. After his appeal of that decision failed, Vogt petitioned under Pennsylvania's Post Conviction Relief Act, 42 PA. CONS. STAT. § 9541 (PCRA). There, he challenged his guilty verdict and argued the letter supported his actual innocence. The state court dismissed his petition as untimely.

Vogt then filed his five-page pro se complaint against Secretary of Corrections John Wetzel and an unknown prison mailroom employee. He claimed the rejection without notice violated his right to procedural due process. And he claimed his First Amendment right to access the courts was violated because the rejected mail contained McClearn's recantation. On those bases, he sought compensatory and punitive damages under 42 U.S.C. § 1983.

Wetzel moved to dismiss. He argued security interests justified the prison's mail policy. Vogt responded in a fourteen-page brief that cited *Procunier* and contended Wetzel's motion "misse[d] the point." Dist. Ct. Dkt. No. 13, at

4

6. At its core, Vogt's allegation was "not that [the letter] was refused, but that it was refused without requ[is]ite notice." *Id.*

While the motion to dismiss was pending before the District Court, the state court vacated and remanded the order dismissing Vogt's PCRA petition. Three months later, the Magistrate Judge recommended the District Court dismiss Vogt's due process claims with prejudice. She also recommended dismissing his access claim without prejudice because it was not ripe for review. Despite Vogt's reliance on *Procunier*, the Magistrate Judge's Report and Recommendation (R&R) did not discuss the case. Still without counsel, Vogt objected to the R&R, reiterating his reliance on *Procunier*. The District Court adopted the R&R without addressing his objections. Vogt filed this timely appeal.

## II

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. Our review is plenary. *Castleberry v. STI Grp.*, 863 F.3d 259, 262–63 (3d Cir. 2017).

We construe Vogt's pro se filings liberally. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013). This means we remain flexible, especially "when dealing with imprisoned pro se litigants" like Vogt. *Id.* at 244. And we "apply the relevant legal principle even when the complaint has failed to name it." *Id.* Yet "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* at 245. And "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.*

III

We begin with Vogt's first contention, that the District Court erred in dismissing his Fourteenth Amendment due process claim.

A

Vogt acknowledges that the Pennsylvania Department of Corrections' policy is to reject incoming mail lacking a return address. DC-ADM 803 § 1.A.4(b), at 1-3 (effective October 29, 2015), ECF No. 116; Vogt Br. 9. But he argues the Supreme Court's decision in *Procunier v. Martinez* means the letter's rejection without notice violated his procedural due process rights. Vogt Br. 16–18. In essence, to prevail on that argument Vogt's complaint must be read to allege a liberty interest in corresponding by mail.

Wetzel argues that Vogt's complaint did not assert "any liberty interest whatsoever[] for due process purposes." Wetzel Br. 41. So he claims Vogt forfeited that argument. Wetzel Br. 40. To the contrary, Vogt contends he alleged a due process claim based on rejection without notice, and that courts must apply the applicable law, even if a pro se litigant failed to mention it by name. Reply Br. 8. We agree with Vogt.

Vogt has consistently maintained that his claim relies on Supreme Court precedent articulating his due process right. And he pinpointed the legal misstep made by Wetzel and the District Court. In his own opposition to the motion to dismiss, he stated:

> [N]otice is required by the constitution when a
> letter addressed to . . . a prisoner is rejected . . . .

6

> *See Procunier v. Martinez*, 416 U.S. 396[, 417–19] (1976) . . . . Due Process Protections require an inmate be notified of the rejection of a letter written by or addressed to him. . . . The [Secretary] argues that there are valid security related reasons for refusing mail with no return address. This misses the point. The violation complained of is not that it was refused, but that it was refused without requ[is]ite notice.

Dist. Ct. Dkt. No. 13, at 6 (cleaned up). In summary, Vogt alleged he was deprived of an "individual interest encompassed within the 14th Amendment's protections" and that no prison procedures "provide[d] due process of law." *Id.*

Although Vogt did not precisely articulate the applicable legal category, he alleged sufficient facts to support a Fourteenth Amendment procedural due process claim. Vogt alleged the prison rejected his mail without notice. And he demanded damages because that rejection violated his due process right under the Fourteenth Amendment. App. 23.

In short, the failure of Vogt's pro se complaint to mention the word "liberty" did not forfeit his Fourteenth Amendment due process claim. He alleged his right to procedural due process was violated when the prison rejected his mail without notice. The bottom line is that his allegation was enough.

B

We now turn to the merits of Vogt's procedural due process claim. States may not deprive "any person" of their liberty "without due process of law." U.S. CONS. amend. XIV

7

§ 1. One such liberty, even for prisoners like Vogt, is the freedom to correspond by mail. *Procunier*, 416 U.S. at 418. Because that liberty interest was first recognized by the Supreme Court in *Procunier*, we look there.

The suit in *Procunier* challenged California's prison mail censorship policy. *Id.* at 398. A three-judge district court decided the policy violated procedural due process. *See id.* at 400. It also held the policy violated free speech. *Id.* On appeal, the Supreme Court affirmed both holdings. *Id.* at 415, 419. Our focus is on the Court's due process analysis.

Most relevant here, the Court held the interest "in uncensored communication by letter . . . is plainly a liberty interest." *Id.* at 418 (cleaned up). So prisons must provide "minimum procedural safeguards" when they "censor or withhold delivery of a particular letter." *Id.* at 417. Notice and a reasonable chance to challenge the original official's decision satisfy due process. *Id.* at 418–19.

Just as the Supreme Court did in *Procunier*, so too have we kept the free speech and due process analyses distinct. In *Nasir v. Morgan*, an inmate challenged a prison censorship policy, alleging it violated his and his correspondent's free speech and due process rights. 350 F.3d 366, 368 (3d Cir. 2003). We held that the prison's censorship policy did not violate the First Amendment. *Id.* at 369–76. But we did not reach the merits of the due process claim because the inmate lacked standing to sue on his correspondent's behalf. *See id.* at 376. More to the point, the fact that we analyzed the due process claim after we decided the First Amendment issue shows the two inquiries are distinct.

8

But in Vogt's case, the District Court collapsed the two inquiries. It held Vogt did not have a protected liberty interest for due process purposes because the policy did not violate the First Amendment. That was error because Vogt has a liberty interest in communicating by mail.

Wetzel resists this conclusion. In essence, he contends *Procunier* applies to censorship cases, while here we consider a content-neutral rejection policy. The trouble with this argument is *Procunier* identified a liberty interest in corresponding by mail. 416 U.S. at 418. And just as a censorship policy constrains correspondence by mail, so too does a rejection policy. Indeed, all the circuit courts that have addressed the issue to date have interpreted *Procunier*'s due process holding as we do today. *See Frost v. Symington*, 197 F.3d 348, 353–54 (9th Cir. 1999) (censoring pornographic magazines); *Bonner v. Outlaw*, 552 F.3d 673, 678 (8th Cir. 2009) (withholding packages); *Perry v. Sec'y Fla. Dep't of Corr.*, 664 F.3d 1359, 1368 (11th Cir. 2011) (rejecting pen pal solicitations); *Miller v. Downey*, 915 F.3d 460, 465–66 (7th Cir. 2019) (refusing a legal newspaper as contraband). For these reasons, we hold that Vogt alleged the state deprived him of a liberty interest under *Procunier*. Because *Procunier* requires "minimum procedural safeguards," 416 U.S. at 417, the District Court on remand can determine whether they were satisfied.

IV

We conclude by addressing briefly Vogt's other arguments on appeal. First, we note the parties' concessions have narrowed the case. Because we hold Vogt has a liberty interest under *Procunier*, we need not address whether he has a property interest. Oral Argument, at 8:20–8:44 (Vogt's

9

concession). Second, since we are remanding Vogt's due process claim, it is appropriate to stay his access to the courts claim while his PCRA case is ongoing. *Id.* at 27:41–28:26 (Wetzel's concession). And so all that remains is Vogt's free speech argument. Although the R&R focused on whether the policy violated Vogt's free speech rights, it is unclear whether he alleged a free speech claim. In any case, that issue is best left for resolution by the District Court on remand.

\* \* \*

A host of compelling interests can justify prison mail regulations. But prisoners like Vogt have a liberty interest in corresponding by mail. So when the prison rejected his letter, notification was required. Consistent with these principles, Vogt stated a claim that his right to procedural due process was violated because he alleged McClearn's letter was rejected without notice. On that basis, we will vacate the District Court's order dismissing Vogt's Fourteenth Amendment procedural due process claim. On remand, the District Court can adjudicate it at summary judgment or trial, as appropriate. And we will vacate the District Court's order dismissing Vogt's access to the courts claim as unripe with instructions to stay that claim while the PCRA litigation proceeds.

10