IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael C. Romig,              :
         Petitioner       :
                        :
        v.              : No. 684 M.D. 2019
                        : Submitted:  September 24, 2021
John Wetzel, Kathy Brittian,   :
Keri Moore and Department of  :
Corrections,              :
        Respondents   :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge[1]
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE LEAVITT                       FILED:  May 23, 2022

         Michael C. Romig, *pro se*, has filed a petition for review in the nature of a mandamus action against John Wetzel, Kathy Brittain,[2] Keri Moore, and the Department of Corrections (collectively, Department).  Romig seeks a judgment against the Department for failing to handle his mail in a manner required by the United States Constitution.  The Department has filed preliminary objections seeking the dismissal of Romig's petition for review, which we sustain in part and overrule in part.

---

[1] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

[2] While her name is spelled "Brittian" in the caption, it appears that the correct spelling is Brittain. *See* Petition for Review, 12/17/2019, Attachment at 4.

Romig is an inmate incarcerated at the State Correctional Institution (SCI) at Frackville. Romig has filed a petition for review[3] challenging the Department's handling of his mail. The petition alleges that mail for inmates at SCI Frackville is received and processed at SCI Mahanoy. It further alleges that certified mail sent to Romig by the "Mifflin County Court of Common Pleas and the within Tax Bureau," *i.e.*, "[l]egal [m]ail,"[4] was rejected by SCI Mahanoy's mailroom. Petition for Review, 12/17/2019, at 2. Because SCI Mahanoy did not notify Romig that it had rejected this certified mail, Romig filed a grievance, in accordance with the Department's inmate grievance system.

Romig's grievance was denied. SCI Mahanoy's mailroom supervisor, F. Walter, responded to Romig on September 19, 2019, stating, in pertinent part, as follows:

> Mail coming from a Sheriff's Office is not considered legal mail as per the [Department's] legal department. Any mail coming from the Sheriff's Office should be sent through Smart

---

[3] In December 2019, Romig filed a document titled "Appeal From Administrative Review of Secretary's Office of Inmate Grievances & Appeals." This was followed in March 2020 by a document titled "Petition for Review (In the Nature of a Complaint in Mandamus)," seeking an order from this Court requiring the Department to respond to his aforementioned December 2019 filing and to enter a judgment against the Department for damages for failing to perform its "duty required by law." Petition for Review, 3/18/2020, at 2. The Petition for Review incorporates by reference his December 2019 grievance appeal. We view the documents, together, as constituting Romig's petition for review and distinguish them herein by date, rather than by the title Romig assigned to each filing. *See Madden v. Jeffes*, 482 A.2d 1162, 1165 (Pa. Cmwlth. 1984) ("We do not hold *pro se* complainants to the stringent standards expected of pleadings drafted by lawyers, and will examine the substance of their complaint to determine if [the complainants] would be entitled to relief if they proved the facts averred.").

[4] Specifically, Romig asserts that the mail from the Tax Claim Bureau contained a "Notice of Tax Sale, and a 10[-d]ay letter on the same" and that it was returned to sender, without notification to Romig, which, in turn, led to his "real estate property" being "cleared of [its] contents and sold multiple times." Romig's Brief at 3-4. Romig further asserts that "[b]asically [his] whole life was in the home." *Id.*

2

Communications.[5] When mail is refused the mail is not opened and the inmate is not notified[.]

Petition for Review, 12/17/2019, Attachment at 2. Romig asserts that Walter's response "seems to attempt to circumvent regular mail procedure for legal mail procedure." Petition for Review, 12/17/2019, ¶6.

Romig appealed the denial of his grievance to Kathy Brittain, Superintendent of SCI Frackville, who upheld the denial. Brittain explained that Romig's grievance was inadequate because he did not "provide a date or any evidence to substantiate that mail was sent by [the] Mifflin County Court of Common Pleas" or state in his grievance that the rejected mail was sent by certified mail. Petition for Review, 12/17/2019, Attachment at 4. Romig notes that it was impossible for him to provide this information because he never received notice that his mail had been refused.

Romig appealed Brittain's response to the Department's Office of Inmate Grievances and Appeals, asserting that Brittain incorrectly applied the Department's mail policy. In his grievance appeal, Romig further contended that Brittain's response did not mention that in his original grievance, he "said that the mail came from 'Mifflin County Courthouse', and relies only on the mention of the '[S]heriff's Office', [] in [an] attempt to circumvent the circumstances." Petition for Review, 12/17/19, Attachment at 5.

The Department's Chief Grievance Officer concluded that "[t]he possible scenario surrounding this returned mail was explained to you; however,

---

[5] Smart Communications provides communications related services to correctional facilities and is the Department's contracted inmate mail processor. Certain types of incoming inmate mail must be sent to Smart Communications, which scans the mail into an electronic system and assigns it an identification number.

without more specific information such as a date, no further information can be provided." Petition for Review, 12/17/2019, Attachment at 7. The Chief Grievance Officer added: "[f]urther, despite your claims, no notification is required to be provided to an inmate when mail is refused[;] the sender is advised of the issue and has the option to fix it and resend the mail." *Id.*

In his petition for review, Romig, citing *Procunier v. Martinez*, 416 U.S. 396, 418-19 (1974),[6] contends that an inmate must be afforded (1) notice of a mail rejection, (2) a reasonable opportunity to appeal the rejection, and (3) a review by a prison official other than the official who made the initial decision. He claims that the Department's rejection of his mail without notice to him violated his rights under the First[7] and Fourteenth Amendments to the United States Constitution.[8] Petition for Review, 12/17/2019, at 2. He also claims a violation of the Department's policy on processing an inmate's legal mail.[9] Romig's petition asserts that an inmate

---

[6] *Thornburgh v. Abbott*, 490 U.S. 401 (1989), overruled *Procunier* but on other grounds.

[7] The First Amendment states, in pertinent part: "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I.

[8] The Fourteenth Amendment states, in pertinent part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any State deprive any person of life, liberty, or property, without due process of law*; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, §1 (emphasis added).

[9] The Department policy in effect during the period relevant to the current matter defined privileged mail, also known as "legal mail," as:

    a. Mail from an inmate's attorney that is either hand-delivered to the facility by the attorney or delivered through the mail system and identified with a control number issued to the sender by the Department's Office of Chief Counsel.

    b. Mail from a court.

    c. Mail from an elected or appointed federal, state, or local official who has sought and obtained a control number issued by the Department's Office of Chief Counsel. **NOTE**: Not all correspondence between an inmate and [an] elected or appointed federal, state, or local official will require privileged correspondence processing.

4

must be notified whenever the Department rejects any inmate mail. Romig seeks an order from this Court awarding him $80,000 in "punitive damages" and compelling the Department "to formulate steps to prevent this from happening again." Petition for Review, 12/17/2019, at 3.

In response to Romig's petition for review, the Department filed preliminary objections. The Department asserts, initially, that his petition for review lacks facts to substantiate that Wetzel, Brittain, and Moore were personally involved in handling inmate mail or returning Romig's mail to the Tax Claim Bureau. The Department next asserts a demurrer for the stated reason that Romig's characterization of mail from the Tax Claim Bureau as legal mail is incorrect; it is not mail from an attorney, the court, or an elected or appointed federal, state, or local official. With respect to Romig's specific contention that the return of his mail to the Mifflin County Tax Claim Bureau, without notification to him, violated his First Amendment right of access to the courts, the Department states:

> "[I]n order to state a cognizable claim for violation of the right to access to the courts, a prisoner must allege and offer proof that he suffered an 'actual injury[,]' [such as the loss or rejection of a legal claim,] to court access as a result of the denial. *Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d Cir. 1997). The Supreme Court has defined actual injury as the loss or rejection of a nonfrivolous legal claim regarding the sentencing or the conditions of confinement. *Lewis v. Casey*, 518 U.S. 343 (1996)."

Control numbers will only be issued when the underlying matter involves matters related to a confidential investigation process or similar concerns.

Department of Corrections, *Inmate Mail and Incoming Publications Procedures Manual*, Glossary of Terms, at 4 (effective October 3, 2018) (emphasis in original). The Department's policy contains additional guidelines for the handling of mail based on the type of mail being sent to or from the inmate. All general incoming correspondence, including letters that are not privileged, must be sent to its third-party contractor, Smart Communications, in Florida. Other types of mail must be addressed in a specified manner and sent to a different location.

Preliminary Objections, 3/4/2021, at 7-8, ¶33 (quoting *Hackett v. Horn*, 751 A.2d 272, 275-76 (Pa. Cmwlth. 2000)). Given the standard enunciated in *Hackett,* the Department contends that Romig has not met the threshold for an access to courts claim. The Department contends that the Tax Claim Bureau is not the Court of Common Pleas of Mifflin County simply because it is located at the courthouse. In any case, Romig does not provide a date upon which his mail was alleged to have been returned to the Tax Claim Bureau.

Finally, the Department maintains that Romig has not stated a claim under the Fourteenth Amendment. The Department contends that its grievance procedure provides Romig with an adequate post-deprivation remedy that forecloses his due process claim. Department's Brief at 18. Further, Romig has a remedy for a willful deprivation of property claim under the statute commonly known as the Political Subdivision Tort Claims Act.[10] *Id*.

Romig captions his pleading as in the "Nature of a Complaint in Mandamus." We begin, then, with a discussion of the form of Romig's action, which incorporates by reference his appeal of the Department's denial of his grievance appeal.

Mandamus is an extraordinary remedy used to compel the performance of a ministerial act or mandatory duty where a petitioner establishes (1) a clear legal right to relief, (2) a corresponding duty in the respondent, and (3) a lack of any other adequate and appropriate remedy. *Tindell v. Department of Corrections*, 87 A.3d 1029, 1034 (Pa. Cmwlth. 2014). The purpose of mandamus is not to establish rights or to compel performance of discretionary acts but, instead, to enforce rights that

---

[10] 42 Pa. C.S. §§8541-42.

have been clearly established. *Id.* Ordinarily, "mandamus is not a proper vehicle for challenging the constitutionality of a statute, regulation or policy." *Clark v. Beard*, 918 A.2d 155, 159 (Pa. Cmwlth. 2007). This is because a writ of mandamus would compel "a governmental ministerial officer to act in disobedience of the requirements of a relevant statute, before there has been a pronouncement of [its] invalidity . . . ." *Unger v. Hampton Township*, 263 A.2d 385, 388 (Pa. 1970) (quoting *Booz v. Reed*, 157 A.2d 170, 172 (Pa. 1960)).

Here, Romig captions his petition for review as a mandamus action, but he seeks relief that is more appropriate to a Section 1983 prison condition action, 42 U.S.C. §1983. Romig seeks "to compel the [Department] to formulate steps to prevent this from happening again." Romig's Brief at 3. The "this" was the loss of his house at a tax sale, for which he seeks damages. In sum, his pleading asserts a constitutional tort. *See Owens v. Shannon*, 808 A.2d 607 (Pa. Cmwlth. 2002).

"A constitutional deprivation cannot be litigated unless the inmate can show unlawful interference with a personal or property interest that has not been limited by Department policy as necessary to operate the prison." *Ex rel. Antonio Bundy v. Secretary John E. Wetzel, Secretary of Pennsylvania Prisons* (Pa. Cmwlth., No. 444 M.D. 2020, filed October 29, 2021) (unreported), slip op. at 5.[11] We have explained that an Eighth Amendment[12] claim based on the *adequacy* of the life necessities provided, rather than whether or not inmates are being deprived of those baseline necessities, cannot be stated in a mandamus action; a mandamus action *can*

---

[11] This Court's unreported panel opinions, issued after January 15, 2008, may be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

[12] The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.

7

compel prison officials to clothe inmates within their care, but it cannot be used to determine the *quality of clothing necessary under society's standards and to order that only clothing of that quality be used to clothe inmates*. *Tindell*, 87 A.3d at 1042 (emphasis added).

Here, the Department does not challenge the form of Romig's action. Rather, it challenges its merits, asserting that Romig has not stated a constitutional claim.

In considering the Department's preliminary objections, this Court must consider as true all well-pleaded material facts set forth in the petition and all reasonable inferences that may be drawn from those facts. *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010). We "need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Id*. To sustain preliminary objections, "it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them." *Id*.

We consider, first, the Department's contention that Romig's pleading does not allege personal involvement by Wetzel, Brittain, and Moore in the handling of inmate mail or the returning of Romig's mail to the Tax Claim Bureau. The Department asserts that Romig was required to plead that each named respondent, through his or her own action, violated the Constitution, and Romig's petition did not do this.

> [I]t is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was a prison supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the        plaintiff        must        show        that        the

8

supervisory [respondents] actively deprived him of a right secured by the Constitution.

*Murray v. Wetzel* (Pa. Cmwlth., No. 542 M.D. 2017, filed August 8, 2018) (unreported), slip op. at 8 (quoting *West v. Varano* (M.D. Pa., No. 1:10-CV-2637, filed August 1, 2013, adopted August 29, 2013)). A respondent's personal involvement cannot be established based solely on that individual's actions in conducting an investigation or responding to a grievance. Department's Brief at 11 (citing *Bush v. Veach*, 1 A.3d 981, 986 (Pa. Cmwlth. 2010) ("liability cannot be predicated solely on the operation of *respondeat superior*")).

In the present matter, Romig's petition does not allege any facts to substantiate the personal involvement of Wetzel, Brittain, or Moore with respect to the handling of Romig's mail. Brittain and Moore are identified as individuals who responded to Romig's grievance, and Wetzel is not described in the petition for review as having any involvement in this matter. These individuals may not be held liable under a theory of *respondeat superior*. Accordingly, we sustain the Department's first preliminary objection and dismiss Wetzel, Brittain, and Moore from the instant action.

We next address the Department's contention that Romig's petition for review fails to state a claim for which relief may be granted. Romig seeks a change in "policy and procedures" to allow all "legal mail" to be delivered to the inmate. *See* Romig's Brief at 7. This Court does not have original jurisdiction to consider such complaints. In *Dantzler v. Wetzel*, 218 A.3d 519 (Pa. Cmwlth. 2019), *abrogated on other grounds by Feliciano v. Department of Corrections*, 250 A.3d 1269 (Pa. Cmwlth. 2021), this Court held that "[a] prison authority's adoption of policies and practices creates neither rights in inmates nor a constitutionally protected interest triggering the inmates' due process protection." *Dantzler*, 218

9

A.3d at 524 (quoting *Orozco v. Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 268 C.D. 2013, filed January 14, 2014) (unreported), slip op. at 4-5); *see also Feliciano*, 250 A.3d at 1275 n.9 (explaining the Department's "regulations do not, in themselves, confer upon inmates any actionable rights"). Indeed, as our Supreme Court recognized in *Bronson v. Central Office Review Committee*, 721 A.2d 357, 358 (Pa. 1998), "internal prison operations are more properly left to the legislative and executive branches and . . . prison officials must be allowed to exercise their judgment in the execution of policies necessary to preserve order and maintain security free from judicial interference."

However, Romig's claims are not limited to complaints about the Department's mail policy. As we noted in *Madden v. Jeffes*, 482 A.2d 1162, 1165 (Pa. Cmwlth. 1984), "[p]rison officials are afforded wide latitude in exercising discretion in the administration of prison affairs, but it is not so wide as to permit them to ignore prisoners' First and Fourteenth Amendment rights." In the present matter, Romig asserts a violation of his First and Fourteenth Amendment rights.

Recently, this Court had an opportunity to review the constitutionality of the Department's mail policy. In *Ortiz v. Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 615 M.D. 2018, filed September 14, 2021) (unreported), we examined the Department's handling of both privileged and non-privileged mail. There, an inmate at SCI Pine Grove alleged that the Department's mail policy, at the time, imposed an unconstitutional burden on his right to receive mail and to his right to privacy in his mail because the original versions of his mail were sent to a third-party vendor where they were copied, and copies, rather than the original documents, were returned to him. The inmate sought injunctive relief to prevent further implementation of the Department's mail policy.

10

In *Ortiz*, we held that the handling of non-privileged mail does not implicate a right to privacy. With respect to privileged mail, the analysis is different. After Ortiz filed his petition, the Department entered into a settlement agreement in federal court, whereby it agreed to stop copying privileged mail and to continue to use the attorney control number system. On that basis, we concluded: "[The] mail policy does not violate [the inmate's] constitutional rights." *Ortiz*, slip op. at 9.

Notably, *Ortiz* did not consider the issue of mail rejection and whether an inmate is entitled to notice thereof. We must, therefore, consider whether the Department's failure to notify Romig of rejected mail violated his constitutional rights. In so doing, we take the Department's objections in reverse order and begin with Romig's Fourteenth Amendment due process claim before addressing the First Amendment arguments.

To maintain a due process challenge, a party must initially establish the deprivation of a protected liberty or property interest. *Shore v. Pennsylvania Department of Corrections*, 168 A.3d 374, 383 (Pa. Cmwlth. 2017). If, and only if, a party establishes the deprivation of a protected interest, will the Court consider what type of procedural mechanism is required to fulfill due process. "Procedural due process rights are triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Feliciano*, 250 A.3d at 1275 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "Lesser restraints on a prisoner's freedom are deemed to fall 'within the expected perimeters of the sentence imposed by a court of law.'" *Id.* at 1275-76 (quoting *Sandin*, 515 U.S. at 484).

11

Here, the Department processed Romig's mail in accordance with its mail policy. On its face, Romig's mail did not appear to be legal mail because it was not from his attorney, the court, or an elected or appointed federal, state, or local official, and it did not contain an attorney control number. Based on the petition for review's allegations, the mail at issue was a notice from the Tax Claim Bureau advising him of an impending sheriff's sale of his home and property that was returned to the Tax Claim Bureau. The question is whether the Department had a duty to provide notice to Romig that this mail had been rejected and returned to the sender.

Following the submission of the parties' briefs in the present case, the United States Third Circuit Court of Appeals issued its decision in *Vogt v. Wetzel*, 8 F.4th 182 (3d Cir. 2021), another case involving the Department and its mail policy. In *Vogt*, the Third Circuit determined that, consistent with *Procunier*,[13] prisons must notify inmates when their mail has been rejected. The *Vogt* Court recounted the facts of that case as follows:

> Three decades ago, Vogt and Arthur McClearn were part of a group who took Francis Landry to a quarry. There, the group forced Landry off a cliff into the water before rolling a "huge rock" in behind him. Landry suffered blunt force trauma and drowned. Vogt and McClearn were arrested shortly afterward. McClearn pleaded guilty to third-degree murder. Vogt went to trial, where McClearn's testimony linked him to Landry's death.

---

[13] In *Procunier*, the United States Supreme Court invalidated California prison regulations that provided for the routine censorship of inmates' outgoing personal correspondence, on the grounds that the regulations violated the free speech rights of the prisoners' correspondents. 416 U.S. at 408. "In the years after *Procunier* [], the [Supreme] Court abandoned the distinction between the free speech rights of inmates and their correspondents on the outside." *Hill v. Pennsylvania Department of Corrections*, _ A.3d _ (Pa. Cmwlth., No. 684 M.D. 2018, filed February 17, 2022), slip op. at 6-7 (quoting *Bieregu v. Reno*, 59 F.3d 1445, 1451-52 (3d Cir. 1995)).

The jury convicted Vogt of several crimes, including first-degree murder. As a result, he was sentenced to life without parole.

Not long before McClearn died, he sent a letter to Vogt dated October 23, 2016, in which he recanted his trial testimony. Explaining he was "ready to tell the truth," McClearn said his testimony was a lie. McClearn wrote that he had a different partner in crime that night; Vogt was "passed out in the car" and "did not go to the quarry." So according to the letter—and contrary to McClearn's testimony at trial—Vogt did not have "anything to do with" Landry's murder.

McClearn's letter never made it to Vogt that fall. The prison's policy is to reject mail lacking a return address, so it rejected the letter. Some six months later, Vogt contacted a United States Postal Service reclamation center looking for a different mailing. The Post Office returned several items, one of which was McClearn's letter. But by that time, McClearn had been dead for about five months.

*Vogt*, 8 F.4th at 184 (internal citations omitted).

In *Vogt*, the Third Circuit rejected the Department's contention that *Procunier* is applicable only to censorship cases, whereas *Vogt* concerned a content-neutral mail rejection policy. The Third Circuit determined that "[t]he trouble with [the Department's] argument is *Procunier* identified a liberty interest in corresponding by mail[, a]nd just as a censorship policy constrains correspondence by mail, so too does a rejection policy." *Id.* at 186. The Third Circuit noted that "[b]ecause we hold Vogt has a liberty interest under *Procunier*, we need not address whether he has a property interest." *Id.* at 187. The Court determined further that it was unclear whether Vogt had alleged a free speech claim, and, in any case, that issue was best left for resolution by the District Court on remand. The Court concluded:

13

> A host of compelling interests can justify prison mail regulations. But prisoners like Vogt have a liberty interest in corresponding by mail. So, when the prison rejected his letter, notification was required. Consistent with these principles, Vogt stated a claim that his right to procedural due process was violated because he alleged [the] letter [at issue] was rejected without notice.

*Id*. Accordingly, the Third Circuit vacated the District Court's order dismissing Vogt's Fourteenth Amendment procedural due process claim.

"'Generally, decisions of federal district courts and courts of appeals are not binding on this Court, . . . but they may have persuasive value.' Unreported federal court decisions may also have persuasive value." *Nagle v. Trueblue, Inc.*, 148 A.3d 946, 959 n.15 (Pa. Cmwlth. 2016). Based on the holdings in *Vogt* and *Procunier*, we are unable to say with certainty that the law will not permit Romig to recover on his claims. Thus, the Department's preliminary objections relative to Romig's alleged Fourteenth Amendment claims are overruled.

Romig also asserts a violation of the First Amendment to the United States Constitution. At the outset, we note: "[T]he First Amendment to the United States Constitution has long been interpreted by the courts as including a general right to communicate by mail." *Bussinger v. Department of Corrections*, 29 A.3d 79, 84 (Pa. Cmwlth. 2011). "This right, however, does not come without qualifications and circumscription, especially in the prison context." *Shore*, 168 A.3d at 379. Here, the Tax Claim Bureau is not obviously in the class of individuals or entities to which the term "legal mail" applies. Even if the mail from the Tax Claims Bureau to Romig did fall into the category of "legal mail," it did not include the attorney control number required by the Department's mail policy. Thus, the Department returned the mail to the Tax Claim Bureau. However, citing *Procunier*, 416 U.S. at 418-19, Romig contends that the Department was required to provide

14

him notice when any mail, legal or otherwise, was rejected and that the Department's failure to provide such notice resulted in the loss of his property. *See* Romig's Brief at 4-5.

Although the Department's mail policy provides inmates, including Romig, with access to mail, generally, based on the Third Circuit's decision in *Vogt*, we cannot conclude with certainty that Romig will be unable to recover on his First Amendment claim. Thus, the Department's preliminary objections as they pertain to Romig's First Amendment claim are overruled.

For the foregoing reasons, we sustain, in part, and overrule, in part, the Department's preliminary objections. We sustain the Department's preliminary objections relative to the lack of personal involvement by Wetzel, Brittain, and Moore. As such, Romig's claims against these individuals are dismissed. We overrule the Department's preliminary objections to Romig's constitutional claims, and we direct the Department to file its answer to the petition for review within 30 days from the date of the attached order.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael C. Romig,            :
          Petitioner      :
                             :
          v.              : No. 684 M.D. 2019
                             :
John Wetzel, Kathy Brittian,  :
Keri Moore and Department of  :
Corrections,            :
          Respondents   :

# **O R D E R**

AND NOW, this 23rd day of May, 2022, upon consideration of the preliminary objections filed by John Wetzel, Kathy Brittian, Kerri Moore and the Department of Corrections to the petition for review in the nature of an action in mandamus filed by Michael C. Romig, it is hereby **ORDERED** that the preliminary objection related to the lack of personal involvement by John Wetzel, Kathy Brittian, and Keri Moore is **SUSTAINED**, and these individuals are dismissed from this matter. The preliminary objection in the nature of a demurrer to the First[1] and Fourteenth Amendment[2] claims are **OVERRULED**. The Department of Corrections is directed to file an answer to the petition for review within 30 days from the date of this Order.

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[1] U.S. Const. amend. I.

[2] U.S. Const. amend. XIV.