NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2067
_____

UNITED STATES OF AMERICA

v.

SEAN FIGARO,
                    Appellant
_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. No. 1-17-cr-00021-001)
District Judge:  Honorable Renée Marie Bumb
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 24, 2024

Before:   JORDAN, McKEE, and AMBRO, *Circuit Judges*

(Filed: June 26, 2024)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Sean Figaro was convicted on drug, gun, and witness-tampering charges.  He

appeals his conviction and sentence.  We will affirm.

_____

 * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

## I. FACTS

Figaro sold illegal drugs using a hotel room in Atlantic City, New Jersey as his base. Law enforcement was alerted to his activities, and, pursuant to a warrant,[1] federal agents searched the room. Figaro was present, along with a young woman, Selena Butler. In the room was a locked safe that did not belong to the hotel. When the agents broke it open, they found a loaded gun with a defaced serial number, heroin and cocaine, and drug packaging materials. The agents arrested Figaro. They later searched his cell phone pursuant to a warrant. The phone contained texts between Figaro and multiple individuals, wherein he referred to himself as a "dealer" and the operator of a "drug dealership." (Supp. App. at 231-32.)

Following his arrest, Figaro sought to prevent Butler from testifying against him. He had his sister call Butler a "rat" on his Facebook account, and he had her send Butler's picture around with the message, "this is the bitch that's snitching." (Supp. App. at 537, 551-52.) Incongruously, he also tried to sweet-talk Butler, using his sister to tell her he loved her and would buy her things. The tactics worked – Butler became "[s]cared" to face Figaro and "fled from New Jersey" until she was arrested in Indianapolis for "[u]nlawful flight to avoid prosecution and testimony[.]" (Supp. App. at 393.)

---

[1] The warrant was directed, inter alia, at searching for drugs, records "pertaining to the illegal possession" of drugs, and other items "reasonabl[y] associated with the possession" of drugs. (D.I. 33-2 at 8 (facsimile of signed warrant).)

A federal grand jury charged Figaro with possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); witness tampering, in violation of 18 U.S.C. § 1512(b)(1); conspiracy to commit witness tampering, in violation of 18 U.S.C. § 1512(k); and unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He pled not guilty.

At the conclusion of a four-day trial, the jury returned a guilty verdict on all five counts. After trial, Figaro began to represent himself. Probation recommended a guidelines sentence of between 360 months and life based on Figaro's extensive criminal history (category VI, the highest there is) and his status as a career offender. The career-offender designation was based upon two prior drug convictions and a robbery-bodily injury conviction.

Figaro sent numerous letters to the Court, objecting to his conviction and the presentence investigation report. The District Court discussed each letter with Figaro on a video conference, denying the objections in order. Later, during his sentencing hearing, Figaro frequently interrupted the Court and addressed it disrespectfully. Still, the Court considered every additional letter filed by Figaro and discussed his handwritten objections to the presentence investigation report. Figaro also accused the Court of meeting with the government and his stand-by counsel to discuss his case without him. The Court assured him, "we were not discussing the merits of the case." (Supp. App. at 1054.)

3

Before the Court sentenced him, Figaro presented a lengthy apology to his victims, which the Court acknowledged "was authentic[.]" (Supp. App. at 1096.) The Court addressed the 18 U.S.C. § 3553(a) factors, calling the crimes serious but acknowledging that Figaro's childhood was "really, really horrible" (Supp. App. at 1097), and imposed a bottom of the guidelines range sentence of 360 months' imprisonment.

Figaro timely appealed his conviction and sentence, and we granted his request to proceed pro se. On appeal, he continued his practice of filing multiple letters, and we admonished him to include all his arguments in one brief. He then filed an informal pro se brief. (3d Cir. D.I. 69 ("Opening Br.").) He nevertheless moved to have his letters considered as part of his merits argument. We denied that motion but permitted him to file an amended brief with any argument he wished to raise. He decided to "stand on the brief" he had filed earlier. (3d Cir. D.I. 78.) Figaro also filed a late reply brief, which we considered on the merits to the extent his arguments were not foreited.

## II. DISCUSSION[2]

Figaro's brief does not cite to the record or to any cases. Usually, to be preserved, all arguments must be supported by "the reasons for them, with citations to the authorities and parts of the record on which the appellant relies[.]" Fed. R. App. P. 28(a)(8)(A). But

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). When reviewing the sufficiency of the evidence underlying a criminal conviction, we ask "whether any reasonable juror could find the defendant guilty beyond a reasonable doubt." United States v. Jacobs, 21 F.4th 106, 109 (3d Cir. 2021). We review the substantive reasonableness of the District Court's sentence for abuse of discretion. United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

we construe pro se pleadings liberally, "especially when dealing with imprisoned pro se litigants like" Figaro. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (internal quotation marks omitted). We may help flesh out pro se litigants' legal arguments, and we commend the government for doing so as well. Still, we cannot allow such litigants to "flout procedural rules[,]" *id.*, including the typical requirement to file a single opening brief, *see* Fed. R. App. P. 28(c) ("Unless the court permits," an appellant may file only an opening brief and a reply brief). Thus, we will focus on the arguments Figaro made in his informal brief. To the extent he has other arguments they are forfeited. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 190 n.5 (3d Cir. 2002) (per curiam) (applying forfeiture rules to pro se litigant).

We construe Figaro's arguments as challenges to both his convictions and sentence. None of the arguments have merit. He first protests the fact that federal authorities began investigating him for sex trafficking but only tried him on drug and gun charges. Such decisions, however, lie within prosecutorial discretion. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (stating that a prosecutor has discretion over "whether or not to prosecute, and what charge to file"). Figaro also contends that there was no warrant allowing a search of the locked safe. But, since the safe reasonably "could conceal items of the kind portrayed in the warrant[,]" *United States v. Dyer*, 54 F.4th 155, 159 (3d Cir. 2022) (quoting *United States v. Crooker*, 688 F.3d 1, 8 (1st Cir. 2012)), the agents had authority to open it once they determined that the safe likely belonged to Figaro.

Figaro also contends that his sister acted on her own volition in intimidating Butler, so his witness-tampering conviction is unsupported by the evidence. Yet the jury heard Figaro's sister testify that she did what she did at Figaro's command, and we do not "decide the credibility of the witnesses" on appeal. *United States v. Reyeros*, 537 F.3d 270, 277 (3d Cir. 2008). Therefore, viewing the evidence in the light most favorable to the government, we conclude that a "rational juror could have found the elements of the crime beyond a reasonable doubt." *Id*.

Turning to his sentence, Figaro argues that the District Court consistently ruled against him at sentencing because he "didn't get along with the judge," constantly interrupted her, and flooded the docket with letters. (Opening Br. at 1.) Those arguments echo complaints he made at sentencing. The record, however, belies his assertions. In fact, the District Court considered every motion Figaro filed, duly ruled upon them, and consistently allowed him to argue disputed issues, despite frequent displays of disrespect and his interruptions. Tellingly, he does not explain how any of the Court's rulings were erroneous. We have reviewed the record and find no reason to believe the Court had "personal bias or prejudice" against Figaro. *See* 28 U.S.C. § 144 (describing the grounds for removing a biased judge).

Figaro also accuses the District Court of meeting with the government and his stand-by counsel behind closed doors. It is no doubt true that proceedings "must satisfy the appearance of justice," *Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 618 (1993), but a closed-door ex parte meeting does not necessarily raise such a concern, *see In re Kensington Int'l Ltd.*, 368

6

F.3d 289, 310 (3d Cir. 2004) (a meeting is disqualifying only if it is "on the merits, or procedures affecting the merits" (quoting Code of Conduct for U.S. Judges Canon 3 § A(4) (2003))). Here, we have no reason to doubt the Court's candor in assuring Figaro that the merits of his case were not discussed during the meeting about which he complains.

Next, Figaro attacks the reasonableness of his sentence, claiming he "was target[ed] as a monster to give [him] a lengthy sentence[,]" that his sentence was "unusually long[,]" and that he has had a hard life and "wants a second chance at freedom." (Opening Br. at 2, 5-6.) Figaro bears the burden of showing "no reasonable sentencing court would have imposed the same sentence" for the reasons provided by the Court. *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc). Sentences within the guidelines range – as Figaro's sentence is – are presumed reasonable. *United States v. Handerhan*, 739 F.3d 114, 124 (3d Cir. 2014). Here, the District Court considered Figaro's mitigating factors, such as his difficult childhood, educational activities in prison, and "authentic" apology, and weighed them against the other factors outlined in § 3553(a), noting the seriousness of the crimes and Figaro's extensive criminal history. (Supp. App. at 1096.) There was no abuse of discretion in the sentence meted out.

Finally, Figaro mentions the First Step Act of 2018, Pub L. No. 115-391, 132 Stat. 5194, without describing its relevance. He moved for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), and we assume he is trying to make the same motion here. He has not shown, however, that he exhausted his administrative remedies, as required by the

7

statute. Consequently, we may not consider his arguments in this regard. *United States v. Raia*, 954 F.3d 594, 596-97 (3d Cir. 2020) (explaining that an inmate must first file his motion with the Bureau of Prisons and may only petition the district court after thirty days or an "adverse decision by" the Bureau).

To the extent that Figaro's brief raises other issues, they are "ill-developed" or "not properly raised" and thus forfeited, as are arguments raised for the first time in his reply brief. *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 145-46 (3d Cir. 2017).

III.    CONCLUSION

For the foregoing reasons, we will affirm Figaro's convictions and the sentence imposed by the District Court.