**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1554
_____

MICHAEL RIVERA,
Appellant

v.

LT. REDFERN, SCI Benner Township; C.O. SHRECK, SCI
Benner Township; C.O. MONSELL, SCI Benner Township;
NURSE PHIL ROGERS, SCI Benner Township
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-21-cv-01118)
Magistrate Judge: Honorable Susan E. Schwab
_____

Argued on February 7, 2024

Before: HARDIMAN, SCIRICA, and SMITH, *Circuit
Judges*.

(Filed: April 11, 2024)

Megha Ram [**Argued**]
Devi Rao
Roderick & Solange MacArthur Justice Center
501 H Street NE, Suite 275
Washington, D.C. 20002
        *Counsel for Appellant*

Michelle Henry
Michael J. Scarinci [**Argued**]
J. Bart DeLone
Office of Attorney General of Pennsylvania
Strawberry Square, 15th Floor
Harrisburg, PA 17120
        *Counsel for Appellees*

_____

OPINION OF THE COURT
_____


**HARDIMAN**, *Circuit Judge*.

Michael Rivera appeals the District Court's summary judgment in favor of four prison officials on his Eighth

Amendment deliberate indifference claim. Because the officials are entitled to qualified immunity, we will affirm.

I[1]

On June 20, 2020, Rivera was a Pennsylvania state prisoner confined in the restricted housing unit. At approximately 5:45 p.m., Rivera was inside an open-air telephone cage when he overheard prison officials preparing to forcibly extract inmate Ryan Miller from a nearby cell. Miller was "covering and uncovering his door," which was "slowing down" prison operations. App. 107. His behavior also presented "a safety issue," as prisoners who cover their cell doors sometimes hurt themselves or even commit suicide. *Id.* Anticipating that prison officials would use pepper spray, Rivera informed them that exposing him to secondhand pepper spray, while he was unprotected in an open-air cage, would cause him to suffer an asthma attack. For nearly 90 minutes, Rivera implored prison officials to escort him back to his cell located 25 to 30 feet away on the same floor, stating that he would not be adversely affected by the pepper spray there. The officials refused, claiming there was no one available to take Rivera to his cell because of the ongoing preparations to extract Miller. Shortly past 7:00 p.m., after Miller had repeatedly refused to exit his cell, prison officials donned gas masks and

---

[1] At summary judgment, we view the evidence in the light most favorable to Rivera and draw all reasonable inferences in his favor. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021). Where there are multiple "interpretation[s]" of video footage, "we are [similarly] bound to choose the interpretation most favorable to [Rivera]." *Rush v. City of Philadelphia*, 78 F.4th 610, 618 (3d Cir. 2023).

released pepper spray into Miller's cell. After Miller was removed, prison officials escorted him to the psychiatric ward.

Rivera began coughing, sneezing, and experiencing a drowning-like sensation within three minutes of the pepper spray being deployed in Miller's cell. Even after a prison official brought Rivera his asthma inhaler and took him back to his cell, his severe symptoms continued. Hearing Rivera coughing and vomiting, a prisoner in the neighboring cell requested medical attention on Rivera's behalf. Rivera then received a nebulizer breathing treatment, which abated his symptoms.

After exhausting his administrative remedies under the Prison Litigation Reform Act, Rivera sued for damages against prison officials in their individual capacities under 42 U.S.C. § 1983.[2] Rivera argued that the officials had acted with deliberate indifference to the substantial risk of a serious harm to him, in violation of the Eighth Amendment to the United States Constitution, when they refused to return him to his cell before deploying pepper spray against Miller.

Without deciding whether there was a constitutional violation, the District Court granted summary judgment to the

---

[2] The District Court dismissed Rivera's claims for damages against the prison officials in their official capacities as barred by state sovereign immunity. *Rivera v. Redfern*, 2023 WL 2139827, *10–11 (M.D. Pa. Feb. 21, 2023). Because Rivera had been transferred to a different prison, the District Court also dismissed his claims for declaratory and injunctive relief as moot. *Id.* at *11–12. Rivera does not challenge these holdings on appeal.

4

prison officials, concluding that "the law was not clearly established such as to put the defendants on notice that spraying a targeted burst of [pepper] spray into another prisoner's cell 50–60 feet away from an inmate with asthma violates the Eighth Amendment." *Rivera v. Redfern*, 2023 WL 2139827, \*7 (M.D. Pa. Feb. 21, 2023) (footnote omitted). Rivera timely appealed.[3]

II

"We exercise plenary review of the District Court's . . . summary judgment and the legal issues underpinning a claim of qualified immunity," *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014), and we may affirm for any reason supported by the record, *see Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 751 (3d Cir. 2019). Summary judgment is warranted only if, when the evidence is viewed in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir. 2006) (cleaned up).

The Supreme Court has instructed us to "'think hard, and then think hard again,' before addressing both qualified immunity and the merits of an underlying constitutional claim." *District of Columbia v. Wesby*, 583 U.S. 48, 62 n.7 (2018) (quoting *Camreta v. Greene*, 563 U.S. 692, 707 (2011)). This is because "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). Consistent with this

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction under 28 U.S.C. § 1291.

directive, we conclude the prison officials are shielded from liability under qualified immunity because "their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (cleaned up).

## A

"To determine whether a right was 'clearly established,' we conduct a two-part inquiry." *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021). We begin by "defin[ing] the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Davenport v. Borough of Homestead*, 870 F.3d 273, 281 (3d Cir. 2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

In this case, we define the alleged constitutional violation largely as Rivera does: prison officials may not "ignore[] . . . repeated pleas to move [a prisoner] prior to exposing him to pepper spray despite 'know[ing]' that deploying pepper spray without moving him would cause him to suffer an asthma attack," *where exposure could be substantially reduced without materially hindering institutional interests*. Rivera Br. 13 (third alteration in original) (quoting App. 12).

## B

Having defined the specific right at issue, we assess whether it was "sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). *See also*

6

*Mullenix*, 577 U.S. at 12 ("[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law.") (cleaned up). We agree with the District Court that Rivera fails to demonstrate that this specific right has been clearly established by: (1) binding precedent from the Supreme Court or the Third Circuit, *see Fields v. City of Philadelphia*, 862 F.3d 353, 361 (3d Cir. 2017); or (2) "a robust consensus of cases of persuasive authority" in our sister circuits, *Clark v. Coupe*, 55 F.4th 167, 181 (3d Cir. 2022) (citation omitted).

Rivera relies primarily on our decision in *Atkinson v. Taylor*, which held that prison officials were not entitled to qualified immunity when they allegedly "exposed [a prisoner], with deliberate indifference, to constant smoking in his cell for over seven months." 316 F.3d 257, 268 (3d Cir. 2003). While we do not require "precise factual correspondence between the case at issue and a previous case," *Peroza-Benitez*, 994 F.3d at 166 (cleaned up), *Atkinson* does not place the constitutional question here "beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Unlike in *Atkinson*, where prison officials gave no reason for declining to move the prisoner, 316 F.3d at 259–61, prison officials here were confronted with competing institutional concerns. As Rivera admitted: (1) prison protocol puts all normal restricted housing unit procedures on pause while prison officials are preparing to forcibly extract a prisoner, *see* App. 93; and (2) all prisoners ordinarily have to be escorted everywhere in the restricted housing unit by at least two officers per prisoner, *see* App. 88. Rivera emphasizes that "there is no prison policy or procedure that precluded any of the [prison officials] from returning him to his cell prior to their us[e] of [pepper] spray." App. 123. Even if true, *Atkinson* sheds no light on how prison officials should prioritize conflicting penological interests. So *Atkinson* did not clearly establish that

7

reasonable prison officials in this case would have known that their decision to focus exclusively on Miller's extraction violated Rivera's Eighth Amendment rights.

None of the other cases Rivera cites fares any better in showing that the Eighth Amendment violation alleged here was clearly established. For example, in *Clement v. Gomez*, the Ninth Circuit reasoned that a "fail[ure] to institute *adequate prison policies* for minimizing the effects of pepper spray on bystander inmates" "*may* lead to liability"—if "'in light of the duties assigned to specific officers or employees, *the need for more or different training is obvious*, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need.'" 298 F.3d 898, 905 (9th Cir. 2002) (emphasis added) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Even if *Clement* alone sufficed to constitute "a robust consensus of cases of persuasive authority" in our sister circuits, *Clark*, 55 F.4th at 181, the alleged Eighth Amendment violation here does not implicate the training of prison officials. *Clement* is thus inapposite. And out-of-circuit cases showing that the use of pepper spray satisfies the objective component of the Eighth Amendment deliberate indifference framework fail for the same reason as *Atkinson*: they do not address whether prison officials violate constitutional rights when they prioritize the health and safety of one prisoner over another. *See* Rivera Br. 35 (citing, for example, *Thomas v. Bryant*, 614 F.3d 1288 (11th Cir. 2010), for the proposition that "where chemical agents are used unnecessarily, without penological justification, . . . that use

8

satisfies the Eighth Amendment's objective harm requirement").

Finally, while we may "take into account district court cases, from within the Third Circuit or elsewhere," *Peroza-Benitez*, 994 F.3d at 165–66, the district court cases Rivera cites do not help him. For example, in *Roberts v. Luther*, the district court concluded that the plaintiff "had a clearly established right, protected by the Eighth Amendment, to be free from the use of '*massively excessive*' amounts of [pepper] spray designed to inflict unnecessary pain." 2021 WL 5233318, *7 (M.D. Pa. Nov. 10, 2021) (emphasis added). Rivera does not make that claim here, nor could he on the facts of the case. We thus agree with the District Court that the caselaw "is not such that 'every reasonable official would interpret it to establish the particular rule [Rivera] seeks to apply.'" *Rivera*, 2023 WL 2139827, at *10 (quoting *Wesby*, 583 U.S. at 63).

C

Rivera makes two arguments in an effort to overcome this dearth of on-point caselaw. First, Rivera cites our decision in *Beers-Capitol v. Whetzel* for its proposition that "a defendant cannot have qualified immunity if she was deliberately indifferent." 256 F.3d 120, 142 n.15 (3d Cir. 2001). "Although a panel of this court is bound by, and lacks authority to overrule, a published decision of a prior panel, . . . a panel may reevaluate a precedent in light of intervening authority." *Reich v. D.M. Sabia Co.*, 90 F.3d 854, 858 (3d Cir. 1996). Our reasoning in *Beers-Capitol* that the constitutional merits and qualified immunity inquiries collapse into one requires such reevaluation in light of subsequent Supreme Court precedent. In *Taylor v. Riojas*, the Court evaluated

9

whether a "reasonable correctional officer could have concluded that . . . it was constitutionally permissible to house Taylor in . . . deplorably unsanitary conditions" *after* already determining that "at least some officers involved in Taylor's ordeal were deliberately indifferent to the conditions of his cells." 592 U.S. 7, 8–9 (2020). This decision makes clear that courts must evaluate the constitutional merits of a claim separate and apart from the question of whether the state actors are entitled to qualified immunity because the law was not clearly established.

Second, Rivera suggests that the constitutional violation here was obvious. We disagree because the facts of this case are far afield from cases in which we or the Supreme Court have applied the obviousness exception. *See, e.g.*, *Taylor*, 592 U.S. at 7–8 (confining an inmate in cells covered in feces); *Hope*, 536 U.S. at 733–35 (handcuffing an inmate to a hitching post for several hours without regular water or bathroom breaks); *Mack v. Yost*, 63 F.4th 211, 233–34 (3d Cir. 2023) (intentionally suppressing religious worship); *Dennis v. City of Philadelphia*, 19 F.4th 279, 290 (3d Cir. 2021) (framing criminal defendants with fabricated evidence).

*       *       *

The prison officials in this case faced conflicting obligations. By choosing to forcibly extract Miller from his cell without first returning Rivera to his cell, they knowingly caused Rivera to suffer an asthma attack. But because that decision was not made in derogation of clearly established law, the officials are entitled to qualified immunity. We will affirm the District Court's judgment to that effect.