NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1643
_____

SOLOMON CARTER,
Appellant

v.

JOHN E. WETZEL, Secretary; DONNA VARNER, Chief Grievance Officer; KERI
MOORE, Grievance Officer; SUPERINTENDENT BARRY R. SMITH, SCI Houtzdale;
SECURITY OFFICER POLITO; C/O III KELLY; INTELLIGENCE CAPTAIN;
PSYCHOLOGIST WALMER; F. NUNEZ, Hearing Examiner; GRIEVANCE
COORDINATOR; MS. REAMNEY, Grievance Coordinator
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 3:18-cv-00232)
District Judge:  Honorable Stephanie L. Haines
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 17, 2025
_____

Before:  PHIPPS, FREEMAN, and CHUNG, *Circuit Judges*

(Filed:   April 2, 2025)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PHIPPS, *Circuit Judge*.

After a Pennsylvania corrections officer sprayed an unrestrained, asthmatic inmate in the face with pepper spray, the inmate initiated this suit for violations of federal and state law. Following discovery, the corrections officer moved for summary judgment. Relying on the factual premise that the inmate was repeatedly noncompliant with the officer's order at the time he was sprayed, the officer claimed immunity from suit with respect to the inmate's state-law tort claims. The District Court granted that motion. In resolving all outstanding claims in the officer's favor, the District Court also *sua sponte* relied on qualified immunity as an alternative basis for entering judgment on the inmate's federal claim. On *de novo* review of the District Court's order in this appeal, we will affirm.

## FACTUAL BACKGROUND

A state prison in Pennsylvania, SCI-Houtzdale, generally allows for the use of Oleoresin Capsicum spray, more commonly known as 'pepper spray,' as a means of subduing violent, aggressive inmates. But SCI-Houtzdale has also issued medical directives prohibiting the use of pepper spray on asthmatic inmates and inmates with a history of abnormal alcohol and drug use.

In November 2016, one of the inmates, then-thirty-six-year-old Solomon Carter, had asthma along with a history of alcohol and drug use. SCI-Houtzdale included on the cover of his medical record a form identifying him as a chemically sensitive inmate not to be sprayed with pepper spray.

On November 17, 2016, Carter, who also has schizoaffective disorder bipolar type and antisocial personality disorder, confronted Acting Sergeant Douglas Polito in the prison's common area. Carter accused Polito of staring into his prison cell earlier that day. Polito told Carter to go back to 'block out,' which meant to rejoin other prisoners in the

2

common area. *See Jackson v. Holland*, 2024 WL 841489, at *1 (E.D. Pa. Feb. 28, 2024) (describing 'block out' as referring to a period of time "when the inmates are permitted to engage in social and recreational activities outside of their cells"). Instead, Carter walked over to a desk to obtain a grievance form to report Polito for harassment. The on-duty desk officer was unable to find a grievance form, so Polito told Carter to block out or return to his cell. Instead of complying, Carter demanded to speak with a shift commander or a lieutenant.

Carter and Polito provide different accounts of what happened next. Under Carter's version, Polito ordered Carter to kneel and lie down. Under Polito's recounting, Polito told Carter to submit to handcuffing.

After that, the situation escalated. Polito called for backup. And Carter neither laid down nor submitted to handcuffing. Rather, as captured on an audio-less surveillance video, Carter knelt on one knee with his hands resting on his leg. With Carter neither lying down nor submitting to handcuffing, and less than three-minutes having elapsed since Carter being told to block out, Polito shot a single three-second burst of pepper spray into Carter's face. Other correctional officers along with Polito then restrained Carter, and Carter was taken to the medical ward for evaluation and decontamination.

Afterward, there were three developments. First, after holding a disciplinary hearing, the prison did not punish Carter for disobeying Polito's orders. Second, Carter filed a grievance against Polito, which the prison denied. Third, two years after the incident, Carter's medical directive was removed, and he was cleared for pepper spray.

3

## PROCEDURAL HISTORY

On November 16, 2018, Carter initiated this suit against Polito in the District Court as an *in forma pauperis* and *pro se* litigant.[1]  *See Carter v. Wetzel*, 2018 WL 11594389, at *1 (W.D. Pa. Nov. 20, 2018).  He sued Polito in his individual capacity[2] for damages under 42 U.S.C. § 1983 for violating the Eighth Amendment and under state law for negligence and the intentional infliction of emotional distress.  Due to the federal civil rights claims and the relatedness of the state-law claims, the District Court, acting through a referral to a magistrate judge, *see* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), had subject-matter jurisdiction over the case.  *See* 28 U.S.C. §§ 1331, 1343, 1367.

Following discovery, Polito moved for summary judgment on all claims.  He argued that he was entitled to judgment as a matter of law on Carter's Eighth Amendment claim because his use of force was not malicious and sadistic and that Carter's state tort theories were barred by sovereign immunity.  His motion attached as an exhibit a surveillance video from the prison that captured the pepper-spray incident and had been produced in discovery.[3]  In opposing that motion, Carter argued that the surveillance video had been doctored such that a minute of its footage had been deleted.

---

[1] As amended, Carter's complaint also identifies nine other prison officials and medical staff as defendants, but he did not perfect service upon them.  *See Carter v. Polito*, 2022 WL 807027, at *1 n.1 (W.D. Pa. Mar. 17, 2022).

[2] Although it may be that Carter attempted to sue Polito in both his official and individual capacities, he did not perfect service on Polito in his official capacity.  *See* Fed. R. Civ. P. 4(j).

[3] In addition to the produced surveillance video, Carter believed a second video existed that documented his removal from the common area to the medical unit.  *See Carter v. Polito*, 2020 WL 13842915, at *1 (W.D. Pa. Dec. 7, 2020).  He wanted that evidence because he believed it would contradict his prison medical records which revealed he had not been in acute distress or sustained serious physical or permanent injuries, and he sought to obtain that video through a motion to compel.  In denying that request, the Magistrate Judge determined no such video ever existed.  *See id.*

The Magistrate Judge recommended that summary judgment be granted in favor of Polito for many of the reasons provided by Polito – including those relying on the surveillance video. *Carter v. Polito*, 2022 WL 1126229 (W.D. Pa. Jan. 14, 2022), *report and recommendation adopted*, 2022 WL 807027 (W.D. Pa. Mar. 17, 2022). In addition, the Magistrate Judge *sua sponte* raised the issue of qualified immunity and recommended it as an alternative basis for denying Carter's Eighth Amendment claim. *Carter*, 2022 WL 1126229, at *7–8; *see also* 42 U.S.C. § 1997e(c)(1). Carter objected to the report and recommendation, which the District Court overruled in its adoption of the report and recommendation. *See Carter*, 2022 WL 807027, at *5.

After invoking this Court's appellate jurisdiction through a timely notice of appeal, *see* 28 U.S.C. § 1291, Carter successfully moved for appointment of counsel. *See generally Tabron v. Grace*, 6 F.3d 147, 155–57 (3d Cir. 1993) (setting forth the factors courts use to ascertain whether to appoint counsel for indigent defendants). But his relationship with his *pro bono* counsel deteriorated, and after the filing of a counseled opening brief and Polito's response, counsel moved to withdraw – at Carter's request. In granting that request, this Court deemed the opening brief an amicus brief, and it also allowed Carter to file his own *pro se* brief and Polito to submit a supplemental responsive brief.

Carter now challenges the grant of summary judgment on his Eighth Amendment and state tort claims.[4]

---

[4] While this case was on appeal, Carter also twice unsuccessfully moved for sanctions regarding the alleged doctoring of the first video and the allegedly missing second video.

**DISCUSSION**

**A. Carter Did Not Forfeit His Challenges to Polito's Immunity Defenses.**

Polito's first response to Carter's appeal is an invocation of forfeiture. In his opposition brief, Polito contends that Carter has not adequately contested the District Court's application of immunity principles because the opening brief did not present an argument challenging the District Court's immunity rulings. Polito is correct about the opening brief, but this appeal presents an unusual circumstance for the doctrine of forfeiture. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017) (explaining courts will not reach a forfeited claim unless there are "exceptional circumstances" and that courts are "less reluctant to bar consideration of a forfeited pure question of law"). After Carter's *pro bono* counsel successfully moved to withdraw, the opening brief was deemed an amicus brief filed on his behalf, and Polito was also permitted to file a supplemental brief. The failure to raise an argument in an amicus brief submitted on behalf of a party does not constitute forfeiture. *Cf.* Fed. R. App. P. 28(a); 3d Cir. L.A.R. 28.1 (2011). Thus, the opening-now-amicus brief's failure to dispute the immunity rulings does not operate as forfeiture.

In his supplemental brief, Polito takes another run at the forfeiture argument. There, he asserts that Carter's *pro se* brief also does not dispute the District Court's immunity rulings. But Carter's *pro se* brief challenges the judgment against his claims on immunity grounds, and it cites the legal authority and factual basis for that contention. Even though he does not make the strongest or even successful arguments, his efforts suffice for the minimal standards for presenting an argument. *See Barna*, 877 F.3d at 145 ("To be preserved, all arguments must be supported specifically by 'the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'" (quoting

6

Fed. R. App. P. 28(a)(8)(A))); *cf. Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013) (explaining that although *pro se* litigants "must abide by the same [procedural] rules that apply to all other litigants," courts may "apply [a] relevant legal principle" even when unstated).

For these reasons, Carter has not forfeited the ability to challenge the District Court's immunity rulings.

## B. Summary Judgment Was Properly Granted in Favor of Polito.

Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). In contesting the entry of summary judgment against him, Carter argues that there is a genuine dispute of material fact as to his compliance with Polito's orders and that Polito is not entitled to immunity.

### 1. *The Professed Genuine Dispute of Material Fact*

Carter argues that the factual dispute over whether he was in compliance with Polito's order when he was pepper sprayed is both genuine and material. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" (footnote omitted) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968))).

He is correct as to genuineness: there is a degree of ambiguity as to Polito's precise command.  *See generally Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (explaining a dispute is 'genuine' "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  On his own grievance form, Carter admitted he was told to lie down:

> He started saying lay down on the ground, get on your knees and lay down flat.  I got on my knees, then realized what he was making me do.

Official Inmate Grievance No. 654622 (JA117).  And in appealing that grievance, Carter reiterated he was only on his knees.  He gave the same version of facts during his interview with the prison's Intelligence Captain.  However, the prison's investigation determined that Carter was told to submit to handcuffing.  Thus, on the summary judgment record, either Polito told Carter to kneel and lie down or to submit to being handcuffed.

The problem for Carter is that under either version of the events, that genuine dispute is not material.  *See generally Anderson*, 477 U.S. at 248 (explaining 'material facts' are "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").[5]  That is so because if the command was to kneel and lie down, Carter only partially complied, and if the command was to submit to handcuffing, Carter also did not comply.  The surveillance video confirms as much: Carter did not lie down flat and he did not put himself in a position to be handcuffed.  Rather, that video shows that Carter went down to one knee with his arms folded on the

---

[5] Carter's original complaint, which was verified, provides another account: Carter averred that Polito told him to "get on [his] knees and lay on the ground [and that he] did as ordered."  Compl. ¶ IV(C) (JA36).  But that account is not in the summary judgment record. The original complaint was not the operative pleading at the time of summary judgment because Carter had amended it beforehand.  *Cf. generally Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity.").  Nor did Carter rely on a statement given under penalty of perjury contained in that verified complaint in opposing summary judgment.  *See* 28 U.S.C. § 1746; Fed. R. Civ. P. 56(c)(4).

leg in front of him. *Cf. Scott v. Harris*, 550 U.S. 372, 380–84 (2007).[6] Thus, while there is a genuine dispute as to precisely what Carter was ordered to do, it is not material because under either version, Carter did not comply – and his noncompliance is the material fact for the immunity defenses.[7] Accordingly, Carter cannot defeat summary judgment based on a genuine dispute of material fact.

> 2. *The Contentions That Polito Is Not Entitled to Judgment as a Matter of Law*

Carter's other challenges contest Polito's entitlement to judgment as a matter of law. Specifically, Carter argues that Polito does not merit qualified immunity with respect to his § 1983 claim and that he should not receive state statutory immunity on the tort claims.

> a. Qualified Immunity

As a legal principle, "qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). And here, even assuming *arguendo* that Polito violated Carter's Eighth Amendment rights – the right of a chemically sensitive inmate who was repeatedly non-complaint in a short period of time to not be subjected to a quick, single burst of pepper spray – was not clearly established as of November 17, 2016, when the incident occurred. *See James v. N.J. State Police*, 957 F.3d 165, 170 (3d Cir. 2020) ("[C]learly established rights are derived either from binding

---

[6] While Carter, on appeal, maintains that the surveillance video has been altered, before the District Court he attested that all that was missing from the video was him getting on both knees. Even if what Carter says is true, Carter still would not have been compliant with Polito's order.

[7] Amicus also asserts genuine disputes about two other facts – the severity of his medical injuries and Polito's motives for pepper spraying him. But those disputes – even if genuine – are likewise not material to the relevant immunity defenses and are thus immaterial.

Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'" (quoting *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018))); *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) ("To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent."); *cf. Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[T]he salient question that the Court of Appeals ought to have asked is whether the state of the law in [the year in which the conduct occurred] gave respondents fair warning that their alleged treatment of [the inmate] was unconstitutional."). And at that time, there was no precedent from either the Supreme Court or this Court holding that such a right existed. *Cf. Rivera v. Redfern*, 98 F.4th 419, 421–25 (3d Cir. 2024) (explaining in the context of deliberate indifference that failing to remove an asthmatic bystander prisoner from his cell before deploying pepper spray near him, even when it had an opportunity to do so, was not a clearly established Eighth Amendment violation). Nor was there a robust consensus of persuasive authority for that proposition. *Cf. Danley v. Allen*, 540 F.3d 1298, 1307–08 (11th Cir. 2008) (explaining that the use of pepper spray without more on a pretrial detainee is not a Fourteenth Amendment violation), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010); *Burns v. Eaton*, 752 F.3d 1136, 1138, 1140 (8th Cir. 2014) (finding no Eighth Amendment violation where the inmate, who was aggressive and threatening toward a prison guard, was warned he would be pepper sprayed if he did not "catch the cuffs"); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (holding that deploying pepper spray when an inmate is "coughing and gagging" did not violate the Eighth Amendment); *Soto v. Dickey*, 744 F.2d 1260, 1265–67, 1271 (7th Cir. 1984) (finding no Eighth Amendment violation where mace was used to get segregated prisoners to submit to handcuffing for failing to "obey a direct order"). Therefore, because it was

not clear to all but the "plainly incompetent" that Polito's actions violated Carter's Eighth Amendment rights, *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (quoting *Wesby*, 583 U.S. at 56), Polito is entitled as a matter of law to qualified immunity.

### b. State Statutory Immunity

For state tort claims, Pennsylvania also provides statutory immunity to state officials and employees. As a general rule, for such immunity to attach, the challenged actions must have been within the scope of employment:

> [T]he Commonwealth, and its officials and employees acting within the scope of their [official] duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

1 Pa. Cons. Stat. § 2310; *see also* Pa. Const. art. I, § 11 ("Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."). Thus, Polito will be statutory immunity if his challenged actions occurred within the scope of his employment.

They did. Under Pennsylvania law, an employee acts within the scope of his employment when he engages in conduct "of the kind he is employed to perform"; the conduct "occurs substantially within the authorized time and space limits"; the conduct "is actuated, at least in part, by a purpose to serve the [employer]"; and, "if force is intentionally used by the [employee] against another, the use of force is not unexpectable by the [employer]." *McGuire ex rel. Neidig v. City of Pittsburgh*, 285 A.3d 887, 892 (Pa. 2022) (quoting Restatement (Second) of Agency § 228 (Am. L. Inst. 1958)).

Each of those elements is satisfied based on the undisputed material facts here. At the time he deployed a short burst of pepper spray, Polito was on duty in the prison serving as an Acting Sergeant, so he was engaging in conduct that he was employed to perform within the authorized time and space limits of his employment. And although Carter was

an inmate subject to a medical directive, Polito was generally authorized to use pepper spray to maintain prison order, and so Polito's use of pepper spray cannot be viewed as devoid of any purpose to benefit his employer. Nor could Polito's use of pepper spray have been entirely unexpected by the prison: Polito deployed it only after Carter ignored three direct orders in a three-minute period. *See* Restatement (Second) of Agency § 230(b) ("A master cannot direct a servant to accomplish a result and anticipate that he will always use the means which he directs or will refrain from acts which it is natural to expect that servants may do."); *cf. Justice v. Lombardo*, 208 A.3d 1057, 1070 (Pa. 2019) (concluding that a trooper who "aggressively jumped over the barrier wielding his handcuffs" and "forcibly wrestled" a person who was not detained and who had complied with his orders was outside the scope of employment). Thus, Polito was acting within the scope of his employment when he sprayed Carter, and Pennsylvania's immunity statute bars Carter's tort claims.

### CONCLUSION

For the above reasons, we will affirm the judgment of the District Court.[8]

---

[8] Judge Freeman respectfully dissents. In her view, the facts in the light most favorable to Carter are that Carter was complying with the corrections officers' orders when Polito pepper-sprayed him. When Carter asked an officer for a grievance form and to speak with a supervisor, he was in the common area where he was permitted during "block out." And Carter was submitting to handcuffing when he knelt before Polito. (After all, kneeling is a classic submissive posture.) Polito is not entitled to qualified immunity on these facts because, by the time of the incident on November 17, 2016, it was clearly established that an inmate who poses no threat to safety or security and is complying with officers' orders has a right to be free from a gratuitous use of force. *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 197 (3d Cir. 2021) (discussing decades-old Supreme Court authority that "officers may not expose inmates to gratuitous force divorced from any legitimate penological purpose"); *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) (stating that it was established by 2001 that an officer may not use gratuitous force against an inmate who had previously resisted but who has been subdued). These facts also support relief on the merits of Carter's Eighth Amendment claim. Carter's documented medical condition that precluded the prison from using pepper spray on him only makes the use of force here more unreasonable. Accordingly, Judge Freeman would reverse the District Court's grant of summary judgment to Polito on the Eighth Amendment claim.

Judge Freeman would vacate the dismissal of the state-law claims and remand those claims to the District Court for analysis of the merits.  The facts, viewed in Carter's favor, do not support state statutory immunity.  The prison could not have expected Polito to use force gratuitously and without any legitimate penological purpose, particularly given the prison's directive that Carter was not to be pepper sprayed.